# CHARLES J. KELLEY v. STATE OF MARYLAND

[No. 2, April Term, 1943.]

*Decided April 28, 1943.*

The cause was argued before SLOAN, C. J., DELAPLAINE, COLLINS, MARBURY, GRASON, MELVIN, and ADAMS, JJ.

*Donald Bowie,* Jr., for the appellant.

*Robert E. Clapp, Jr., Assistant Attorney General,* with whom were *William C. Walsh, Attorney General,* and *Joseph Simpson, State's Attorney for Montgomery County,* on the brief, for the appellee.

ADAMS, J., delivered the opinion of the Court.

Appellant was indicted in the Circuit Court for Montgomery County on a charge of manslaughter. The indictment followed the statutory form prescribed by Code of Maryland, Art. 27, Sec. 665, and charged that the appellant, "on the eighteenth day of July in the year of our Lord nineteen hundred and forty-two at the County aforesaid, (Montgomery Co.) feloniously did kill John Arthur Shaw * * *."

On arraignment a plea of "not guilty" was entered, and accused elected trial by jury. The single exception in the record on this appeal was taken to a ruling of the trial court permitting the State over the objection of the defendant to prove by the testimony of Dr. Cyrus E. Hawks that the death of John Arthur Shaw, the victim of the alleged homicide, occurred in the District of Columbia, outside the territorial limits of Montgomery County. The contention of the appellant is that it is not competent under an indictment charging that the accused did kill John Arthur Shaw at Montgomery County, for the State to prove that the death of Shaw occurred outside the limits of said county.

No demurrer was filed to the indictment nor was there a demand for the particulars of the alleged offense. After the witness Hawks had testified over defendant's objection, that the death of the victim of the alleged homicide occurred in the District of Columbia, two other witnesses testified to the same fact without objection or exception being noted by the defendant.

Two questions are presented for decision on this appeal: First, whether the trial court erred in overruling the objection to the testimony of Dr. Hawks; and, second, if the court erred in allowing Dr. Hawks to testify to the death of the victim of the alleged homicide outside the State of Maryland, was the error rendered harmless by the fact that subsequently two other witnesses testified to the same fact without any objection on the part of the defendant.

By Code, 1939, Art. 27, Sec. 628, Acts of 1809, Chap. 138, Sec. 17, it is provided that "If any person be feloniously stricken or poisoned in one county, and die of the same stroke or poison in another county within one year thereafter, the offender shall be tried in the court within whose jurisdiction such county lies where the stroke or poison was given; and in like manner an accessory to murder or felony committed shall be tried by the court within whose jurisdiction such person became accessory."

In the case of *Stout v. State*, 76 Md. 317, 25 A. 299, the indictment charged that on February 1, a mortal blow was inflicted on the deceased by the accused at Cecil County, Maryland, and that of this mortal wound deceased died in Philadelphia, Pennsylvania, on March 4, following.

Referring to Code, Art 27, Sec. 278, (Now Sec. 628), it was held "that this statute is simply declaratory of the common law, and the same reason and principle equally apply to the case where the mortal blow or poison is given in any county of this State, and the party so stricken or poisoned shall, in consequence of the blow or poison, die out of the State * * * as to the case provided for by the terms of the Statute." "* * * The grade and characteristics of the crime are determined immediately that death ensues, and that result relates back to the original felonious wounding or poisoning. The giving the blow that caused the death constitutes the crime." The law announced in the Stout case is in accord with the weight of authority. In 22 *C. J. S., Criminal Law*, Sec. 185, Subsec. q, it is stated, "Where a mortal blow was inflicted or poison was given in one county and death ensued in another, it was doubted at common law whether the homicide could be tried in either. The courts, however, have held that there is jurisdiction in such a case, most of them holding that the prosecution should be in the county where the blow was given or where the poison was administered."

And in a note in 39 *L. R. A., N. S.*, p. 822, a number of cases are cited in support of the statement that "It is well settled that the courts of the State where the mortal wound is inflicted, although the death occurs in another State, may indict and punish the criminal."

The ancient common law difficulty as to venue of trial, where the victim of a stroke inflicted in one county died in another county, apparently had its origin in the period when jurors determined the guilt or innocence of the accused on the basis of their personal knowledge of the

occurrence rather than on the testimony of witnesses produced at the trial.

Stephens, in his "History of the Criminal Law of England," Vol. 1, p. 276, says:

"In short, the theory of trial by the neighborhood (*vicinctum—visne—venue*) has been inflexibly adhered to though it has been subjected to many exceptions. It was originally carried out so far, that at common law, and down to the passing in 1548 of the statute 2 & 3 Edw. 6 C. 24 if a man was wounded in one county and died in another, the person who gave the wound was indictable in neither," for that, to quote the preamble of the statute referred to, "by the custom of this realm, the jurors of the county where such party died of such stroke, can take no knowledge of the said stroke, being in a foreign county." * * * "*ne* the jurors of the county where the stroke was given cannot take knowledge of the death in another county. * * * "

"The result is that in a large number of statutes by which offenses are defined, special provisions are made as to the place in which the venue may be laid. The only general interest attaching to these exceptions is that they prove that the general principle which requires so many exceptions must be wrong."

And Lord Hale in his "Pleas of the Crown," Vol. 1, p. 426, says: "At common law if a man had been stricken in one county and died in another, it was doubtful whether he (the felon) were indictable or triable in either, but the more common opinion was that he might be indicted where the stroke was given, for the death was but a consequence, and might be found, though in another county, * * * and if the party died in another county, the body was removed into the county where the stroke was given, for the coroner to take an inquest *super visum corporis* * * *."

With the transition of the trial jury from the ancient to the modern concept, the reason for the doubt as to the proper venue in homicide cases such as the instant case

has ceased to exist. The reason for the rule failing, the rule itself must fail.

The prevailing modern view is well stated in *Kocourek's Jural Relations,* at page 280: "If A in State X puts in motion a force which strikes B in State Y and which has a further result (*e. g.,* death) in State Z, where was the act done? The prevailing common-law answer is that the act is done where the physical contact between the person harmed and the outside force takes place. This is a convenient and rational solution; it is based on the idea that the place where the duty was first invaded controls, and that the further results (acts) are accessory to the principal (initial) act."

It is well established law that the Circuit Court for Montgomery County was the proper venue for the trial of this action. The next inquiry is whether under the indictment in this case the evidence objected to was admissible.

The indictment was in the form prescribed by statute (Code, 1939, Art. 27, Sec. 665) and the validity and sufficiency of this form was passed upon in the case of *Neusbaum v. State,* 156 Md. 149, 143 A. 872, where it was charged that the statutory form was not sufficient to comply with Article 21 of Maryland Bill of Rights requiring that "in all criminal prosecutions, every man hath a right to be informed of the accusation against him" and the Fourteenth Amendment to the Constitution of the United States relating to "due process of law." It was held that any difficulty resulting from the failure to state the manner and means of death on the indictment is met by the rule which allows the defendant to demand the particulars of the offense with which he is charged where the indictment is in general terms. It was specifically held that Code, Art. 27, Sec. 562, now codified as Section 665, is a valid enactment.

The conclusion therefore is that the trial court properly overruled the objection to the testimony as to the place of death; that the death of Shaw in the District of

Columbia was a fact accessory to the criminal act committed in Montgomery County and related back to the criminal act and there was therefore no variation between *allegata* and *probata* rendering the proposed evidence inadmissible.

This conclusion makes it unnecessary to consider the effect of the failure of the defendant to object to the testimony of two other witnesses as to the place of the death of Shaw.

*The judgment of the trial court is affirmed, with costs.*