764 A.2d 345

**Michael Lawrence WEST**

**v.**

**STATE of Maryland.**

**No. 3025, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

Dec. 28, 2000.

· John L. Kopolow, Asst. Public Defender and Mitra K. Battan, Law Student (Rule 16) (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellant.

Rachel Marblestone Kamins, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore and Jack Johnson, State's Atty. for Prince George's County, Upper Marlboro, on the brief), for Appellee.

Argued before MURPHY, C.J., THIEME,* and SONNER, JJ.

---

* Thieme, J. participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a retired, specially assigned member of this Court.

SONNER, Judge.

The present case requires this Court to address the issue of territorial jurisdiction between two sovereign governments. Appellant, Michael Lawrence West, claims the State of Maryland was without jurisdiction to prosecute him for the same criminal acts for which he was convicted in Washington, D.C. several months earlier. In furtherance of this claim, appellant raises the following four questions:

(1) Was the evidence legally insufficient to establish Maryland's jurisdiction as to the charges of first degree rape and first degree sexual offense?

(2) Did the trial judge err when instructing the jury that it could find Maryland had jurisdiction to prosecute Appellant for a crime if some element of the crime occurred in Maryland?

(3) Did the trial judge err in prohibiting defense counsel from informing the jury that the Appellant was already tried and convicted for the same offenses in the District of Columbia, where State introduced evidence of the co-defendant's incarceration in Maryland for the same offenses?

(4) Must the conviction and sentence on one count of use of a handgun be merged?

For the reasons set forth below, we affirm the judgment of the trial court.

Shortly after midnight on October 17, 1997, Michael Lawrence West ("West"), accompanied by Jamahl Higgs ("Higgs"), carjacked and robbed Gregory Tolson ("Tolson") and his female companion at gunpoint. The two victims were returning home from a Howard University alumni event when West and Higgs approached Tolson's car in the parking lot of Tolson's Prince George's County apartment home. West ordered Tolson to get out of the car and then robbed him of his cash and car keys. West gave the keys to Higgs and the two men drove across the state line into Washington, D.C., with Tolson's female companion still in the back seat. While

driving through the streets of Washington, West and Higgs raped and robbed Tolson's friend.

On August 16, 1999, the Superior Court of the District of Columbia sentenced West to twelve years to life for first degree sexual abuse while armed; seven to twenty-one years for armed robbery; and five to fifteen years for possession of a firearm during the commission of a violent dangerous offense. Several months later, the Prince George's County Circuit Court also tried West, and found him guilty of kidnaping, first degree rape, first degree sexual offense, two counts of first degree assault, carjacking, robbery with a deadly weapon, robbery, and two counts of the use of the handgun in the commission of a felony.

West filed a pre-trial motion in the circuit court to dismiss the charges of rape and sexual offense. West argued that since those criminal acts took place in Washington, D.C., Maryland did not have proper jurisdiction to charge him with those crimes. The circuit court denied the motion and West has appealed the same issue.

It is outside Maryland's territorial jurisdiction to convict a person for offending the laws of the State of Maryland if the offense is committed in another state. *State v. Cain,* 360 Md. 205, 211–12, 757 A.2d 142 (2000); *Pennington v. State,* 308 Md. 727, 730, 521 A.2d 1216 (1987); *Goodman v. State,* 237 Md. 64, 67, 205 A.2d 53 (1964); *Breeding v. State,* 220 Md. 193, 200, 151 A.2d 743 (1959); *Bowen v. State,* 206 Md. 368, 375, 111 A.2d 844 (1955); *State v. Jones,* 51 Md.App. 321, 325–26, 443 A.2d 967 (1982), *vacated on other grounds,* 298 Md. 634, 471 A.2d 1055 (1984). "It is a general principle of universal acceptation that one state or sovereignty cannot enforce the penal or criminal laws of another, or punish crimes or offenses committed in and against another state or sovereignty." *State v. Hall,* 114 N.C. 909, 19 S.E. 602 (N.C.1894).

At common law, as one noted commentator observes, "[J]urisdiction over crimes is limited even further than the territorial principle would seem to require, by the notion that each crime has only *one* situs, and that *only* the place of the situs

has jurisdiction." 1 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 2.9(a), at 180 (1986) (emphasis added). In the instance of murder, for example, the crime is committed at the place where the fatal force impinges upon the body of the victim, rather than where the defendant's act has initiated the fatal force or where the victim dies. *See Stout v. State,* 76 Md. 317, 318, 25 A. 299 (1892); *Hall,* 19 S.E. at 602. Thus, if a man standing in the State of North Carolina fires a gun across the state line, striking and killing a victim in the State of Tennessee, the crime is committed in Tennessee, and North Carolina will not have jurisdiction over the crime. *See Hall,* 19 S.E. at 604.

The history of territorial jurisdiction finds its roots in the English common law of venue. In the early periods of English law, it was necessary that a jury came from the vicinage where the matters of fact occurred. As a result of this rule, however, crimes committed across county lines often went unanswered because neither county asserted jurisdiction over the defendant. *Stout,* 76 Md. at 321–22, 25 A. 299. As former Chief Judge Alvey wrote in *Stout:*

> [T]o fix a certain venue for the trial of the crime, the statute of 2 & 3 Edw. VI. was passed, and, after reciting in a long preamble the great failures of justice which arose from such extreme nicety, that statute enacted that in cases of striking or poisoning in one county and death ensuing in another the offender could be indicted, tried, and punished in the district or county where the death happened, as if the whole crime had been perpetrated within the boundary of such district or county.

*Stout,* 76 Md. at 322, 25 A. 299.

Modern Maryland law reflects this statement. *Urciolo v. State,* 272 Md. 607, 325 A.2d 878 (1974); *Goodman,* 237 Md. 64, 205 A.2d 53 (1964); *Medley v. Warden,* 210 Md. 649, 123 A.2d 595, *cert. denied,* 352 U.S. 858, 77 S.Ct. 77, 1 L.Ed.2d 64 (1956); *Bowen v. State,* 206 Md. 368, 111 A.2d 844 (1955); *Grindstaff v. State,* 57 Md.App. 412, 470 A.2d 809, *cert. denied,* 299 Md. 655, 474 A.2d 1344 (1984); *Jones,* 51 Md.App. at 321,

443 A.2d 967. Yet, Maryland draws a clear distinction between venue and territorial jurisdiction. *State v. Butler*, 353 Md. 67, 73, 724 A.2d 657 (1999) ("Venue . . . pertains to the county in which a case can be tried; territorial jurisdiction concerns whether the offense was committed within the boundaries of the State.").

 Maryland, however, does not rigidly hold to the notion that the situs of a crime must be a singular element. In *Jones, supra,* this Court did not define a singular situs for the crime of rape. *Jones,* 51 Md.App. at 326–27, 443 A.2d 967. The appellee in *Jones* urged this Court to choose the penetration element of rape as the situs of the crime and decline jurisdiction because the penetration occurred outside the State of Maryland. *Id.* at 337–38, 443 A.2d 967. Instead, we sought to determine jurisdiction by inquiring whether the essential elements of rape took place within Maryland's borders. *Id.* at 330, 443 A.2d 967. Finding that the elements of force, lack of consent, and placement of the victim in imminent fear of kidnaping did, in fact, take place in Maryland, we affirmed the jurisdiction of the circuit court. *Id.* at 329, 443 A.2d 967.

Our departure in *Jones* from the traditional "one situs, one jurisdiction" analysis was not extraordinary. Every sovereignty may interpret the situs of a crime differently. The common law does not evolve throughout the several states uniformly. Just as each state may define the particular criminal elements of certain proscribed acts, each state may also define the situs of the crime based upon where certain acts take place. Therefore, it is entirely possible that one state may choose the penetration element of rape as the situs of that crime, while a neighboring state may consider a different element of rape to constitute the situs of the crime. In such an example, both states may prosecute the defendant for the same act. As Judge Raker recently explained,

> The question of how to determine in which state a crime has been committed has been settled in various ways by the several states . . . Some courts have asserted that a crime may, for jurisdictional purposes, have several essential ele-

ments, *and that where these occur in several states, each such state has jurisdiction.*

*Cain,* 360 Md. at 214, 757 A.2d 142 (emphasis added).

■■■■ This conclusion is well founded within the doctrine of dual sovereignty. The dual sovereignty doctrine is rooted in "the common law conception of crime as an offense against the sovereignty of the government." *Heath v. Alabama,* 474 U.S. 82, 88, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985). The power of each sovereign state to determine jurisdiction over criminal acts that occur, even remotely within a state's boundary, is embodied within our federalist system of government. As Justice O'Connor stated in *Heath:*

> It is as well established that the States, "as political communities, [are] distinct and sovereign, and consequently foreign to each other." *Bank of United States v. Daniel,* [37 U.S. 32,] 12 Pet. 32, 54, 9 L.Ed. 989 (1838). *See also Skiriotes v. Florida,* 313 U.S., [69] at 77[, 61 S.Ct. 924, 85 L.Ed. 1193]; *Coyle v. [Smith, Sec. of State of] Oklahoma,* 221 U.S. [559], at 567[, 31 S.Ct. 688, 55 L.Ed. 853]. The Constitution leaves in the possession of each State "certain exclusive and very important portions of sovereign power." The Federalist No. 9, p. 55 (J. Cooke ed.1961). Foremost among the prerogatives of sovereignty is the power to create and enforce a criminal code. *See, e.g., Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,* 458 U.S. 592, 601[, 102 S.Ct. 3260, 73 L.Ed.2d 995] (1982); *McCulloch, supra,* [17 U.S. (4 Wheat) 316] at 418[, 4 L.Ed. 579]. To deny a State its power to enforce its criminal laws because another State has won the race to the courthouse "would be a shocking and untoward deprivation of the historic right and obligation of the States to maintain peace and order within their confines." *Bartkus [v. People of State of Ill.],* 359 U.S., at 137[, 79 S.Ct. 676, 3 L.Ed.2d 684].

*Heath,* 474 U.S. at 93, 106 S.Ct. 433.

We are mindful, however, that we must adhere to important limitations in determining whether a crime is committed within the jurisdiction of Maryland. The dissenting opinion of

Judge Eldridge in *Trindle v. State,* 326 Md. 25, 602 A.2d 1232 (1992), warns the expansion of state territorial jurisdiction over criminal cases could lead to "friction among the states and overtax the criminal justice resources of this State. It would lead to trials of defendants in jurisdictions far away from where the offenses were actually committed, in violation of the Maryland Declaration of Rights and the Sixth Amendment." *Id.* at 53, 602 A.2d 1232.

To safeguard against unwarranted expansion, the element or elements that constitute the situs of a crime must be *essential elements* of that crime. It is not enough for the State to prove *any element* of the crime occurred in Maryland to establish jurisdiction. Furthermore, the State is required to prove jurisdiction beyond a reasonable doubt. *Jones,* 51 Md.App. at 340, 443 A.2d 967. As the Court of Appeals recently stated, "[w]hen the evidence generates a genuine issue and becomes, therefore, a factual determination for the trier of fact, the prosecution must prove territorial jurisdiction beyond a reasonable doubt." *Butler,* 353 Md. at 83–84, 724 A.2d 657.

This leads to the discussion of appellant's claim that the Prince George's County Circuit Court erred when it instructed the jury as follows:

If you find beyond a reasonable doubt that *some* of the elements of these crimes occurred in Maryland, and they were part of a continuing course of conduct, including the remaining elements of those crimes occurring in another jurisdiction, the defendant may be found guilty of these offenses. (Emphasis added).

As noted *supra,* a finding of "some" or "any" element of a crime is not enough to prove jurisdiction is proper. The element or elements judicially determined to constitute the situs of a crime must be essential elements; however, we stated in *Jones* that *every* element of rape is an essential element of the crime. *Jones,* 51 Md.App. at 328, 443 A.2d 967 ("Each [element] is therefore integral to the charge."). Thus, a finding of any element of rape is a finding of an essential

element of rape constituting the situs of the crime and determinative of jurisdiction. Although it would be better practice for a trial court to enumerate the essential elements of a crime when instructing a jury about jurisdiction, the instructions in the instant case as to the charges of first degree rape and first degree sexual offense were without error.

We now turn our attention to West's final two claims. West argues that the circuit court wrongly prohibited him from informing the jury of his conviction in the Superior Court for the District of Columbia arising from the same criminal conduct. He asserts that, because the State elicited direct testimony from Higgs explaining that Higgs pled guilty to first degree sexual offense in Maryland, West was entitled to present evidence of his own conviction in Washington, D.C. under the doctrine of curative admissibility. However, the doctrine of curative admissibility is inapplicable to the case at hand. In *Clark v. State*, 332 Md. 77, 629 A.2d 1239 (1993), the Court of Appeals explained, "[w]e hold that a trial judge has the discretion to permit curative admissibility of inadmissible evidence to counter other *inadmissible evidence* admitted without objection." *Id.* at 90, 629 A.2d 1239 (emphasis added). Here, by contrast, the evidence of Higgs's guilty plea was not inadmissible evidence. The government is allowed to question an accomplice as to his guilty plea for the "purpose of exposing in advance the basis for a credibility attack on the damaging testimony that the witness gave." *Clemmons v. State*, 352 Md. 49, 58, 720 A.2d 1170 (1998).

Furthermore, the issue of Maryland's jurisdiction over the crime charged is a question of fact for the Maryland jury. It is wholly irrelevant that a jury sitting in Washington, D.C. determined jurisdiction over West and tried him for violations of the District of Columbia criminal code. As discussed *supra*, a finding of jurisdiction in one State does not, in and of itself, bar Maryland from successively finding jurisdiction for the same conduct.

In *Bailey v. State*, 303 Md. 650, 496 A.2d 665 (1985), the appellant, Erquies C. Bailey, argued that evidence of a

previous conviction in the State of New Jersey for the same crime he was currently being prosecuted for in Maryland would establish that he was a "receiver" and not a "robber." *Id.* at 660, 496 A.2d 665. Bailey argued that, if he could establish this fact, Maryland would be collaterally estopped from going forward with the prosecution. *Id.* The Court of Appeals ruled that collateral estoppel had no application because different parties were adverse to Bailey in the New Jersey and Maryland prosecutions. *Id.* Similarly, because Washington, D.C. and Maryland are different parties to West, the circuit court correctly prohibited the Washington, D.C. jury from deciding facts within the province of the Maryland jury. Finally, the circuit court found that the "prejudicial value of revealing to this jury that another jurisdiction may have convicted this defendant of one or more of the charges that are before the court far outweighs any probative value." We agree and will not disturb that ruling.

West's final claim on appeal is that the two counts of use of a handgun in the commission of a felony or a crime of violence in violation of the Maryland Code (1957, 1996 Repl. Vol., 2000 Supp.) Art. 27, § 36B(d), must merge. Merger is inappropriate in this case because each count pertained to a separate victim. The jury found West guilty of the use of a handgun in the commission of a felony or a crime of violence against Gregory Tolson. Under a separate count, the jury found West guilty of use of a handgun in the commission of a felony or crime of violence against the female victim. The Court of Appeals addressed this question in *Brown v. State*, 311 Md. 426, 535 A.2d 485 (1988). "At least in the context of multiple victims, nothing in the language of § 36B(d) suggests ... that there can be only one handgun use offense per criminal transaction. We are convinced that multiple handgun use convictions and sentences are appropriate where there are multiple victims." *Id.* at 435–436, 535 A.2d 485. We find *Brown* applicable to the facts of the instant case and affirm.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**