797 A.2d 1278

Michael Lawrence WEST

v.

STATE of Maryland

No. 14 Sept. Term, 2001.

Court of Appeals of Maryland.

May 7, 2002.

John L. Kopolow, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Rachel Marblestone Kamins, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent.

Argued Before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

## OPINION

ELDRIDGE, Judge.

In this case, the petitioner, Michael West, is seeking to overturn his convictions in the State of Maryland for first-degree rape[1] and first-degree sexual offense[2] on the ground

---

**1.** Maryland Code (1957, 1996 Repl.Vol., 2001 Supp.), Art. 27, § 462(a), defines the crime of first-degree rape as follows:

"(a) *Elements of offense.*—A person is guilty of rape in the first degree if the person engages in vaginal intercourse with another person by force or threat of force against the will and without the consent of the other person and:

(1) Employs or displays a dangerous or deadly weapon or an article which the other person reasonably concludes is a dangerous or deadly weapon; or

(2) Inflicts suffocation, strangulation, disfigurement, or serious physical injury upon the other person or upon anyone else in the course of committing the offense; or

(3) Threatens or places the victim in fear that the victim or any ·person known to the victim will be imminently subjected to death, suffocation, strangulation, disfigurement, serious physical injury, or kidnapping; or

(4) The person commits the offense aided and abetted by one or more other persons; or

(5) The person commits the offense in connection with burglary in the first, second, or third degree."

**2.** Code (1957, 1996 Repl.Vol., 2001 Supp.), Art. 27, § 464(a), defines a first-degree sexual offense as follows:

"(a) *Elements of offense.*—A person is guilty of a sexual offense in the first degree if the person engages in a sexual act with another

that the State lacked territorial jurisdiction to prosecute him for these offenses. West and a male accomplice abducted a woman in Prince George's County, Maryland, and drove her across the state line into the District of Columbia, where both men coerced the victim into engaging in sexual conduct. We shall hold that, since the sexual conduct occurred in the District of Columbia, the State of Maryland did not have territorial jurisdiction to prosecute West for first degree rape and first degree sexual offense.

## I.

During the evening of October 17, 1997, Michael West and Jamahl Higgs approached a 1991 Honda Accord automobile parked in front of the home of Gregory Tolson in Adelphi, Prince George's County, Maryland. Tolson was also the owner of the automobile. Inside the car, on the back seat, Tolson and his girlfriend were having sexual relations. West tapped on the window of the car with a 9mm Ruger handgun, and he ordered Tolson to get out of the vehicle. Tolson reluctantly complied, and he pleaded with West and Higgs to "let my girl go." West then directed Tolson to give him his wallet and car keys, and Tolson handed over these items. Tolson's girlfriend, meanwhile, remained in the back seat of the car. After taking Tolson's keys, West and Higgs entered the car themselves, with Higgs sitting in the driver's seat and

---

person by force or threat of force against the will and without the consent of the other person and:

(1) Employs or displays a dangerous or deadly weapon or an article which the other person reasonably concludes is a dangerous or deadly weapon; or

(2) Inflicts suffocation, strangulation, disfigurement, or serious physical injury upon the other person or upon anyone. else in the course of committing the offense; or

(3) Threatens or places the victim in fear that the victim or any person known to the victim will be imminently subjected to death, suffocation, strangulation, disfigurement, serious physical injury, or kidnapping; or

(4) The person commits the offense aided and abetted by one or more other persons; or

(5) The person commits the offense in connection with burglary in the first, second, or third degree.

West in the front passenger's seat. Higgs proceeded to drive away with the woman still in the back seat.

About a block away from the scene of the abduction, Higgs stopped the car at the side of the road, and traded places in the vehicle with West. Higgs sat in the front passenger's seat, and West then started driving. He drove across the state line into the District of Columbia. At some point, the woman "realized they were on 16th Street in D.C." and she "asked the men whether they intended to hurt her or let her go." They responded, "Just do what we say. We're not going to hurt you." At a stoplight in the District of Columbia, West climbed into the backseat and Higgs began to drive. West demanded that the woman engage in sexual intercourse with him. The woman protested, and West brandished his gun and threatened to harm her if she did not comply. West then engaged in vaginal intercourse with the woman. Subsequently, Higgs stopped the car and switched places with West. West resumed driving the car, and he ordered the victim to perform fellatio on Higgs. The woman again protested. West then extended his arm into the rear passenger compartment as he was driving, and forced the victim to perform fellatio by pushing her head down. Both of these sexual assaults occurred within the District of Columbia.

The automobile came to a stop a few blocks beyond the site of the second assault upon the woman, and while still in the District of Columbia. West and Higgs directed the victim to get out of the car. She requested that the men return her purse, but they refused to do so. The victim exited the car, and her assailants sped away. Within a few minutes, she received help from a nearby security guard. The police were then notified, and the victim was transported to D.C. General Hospital, where she was released a few hours later.

Subsequently, based upon the above-summarized acts in the District of Columbia, West was charged in the District of Columbia Superior Court with first degree sexual abuse while armed, first degree sexual abuse, armed robbery, and possession of a firearm during a violent offense. He was found

guilty of these offenses and received sentences of 12 years to life for first degree sexual abuse while armed, 7–21 years for armed robbery, and 5–15 years for the firearm offense. The record before us does not indicate what sentence, if any, was imposed on the other sexual abuse verdict, and does not disclose whether the District of Columbia sentences were to run consecutively or concurrently.

On June 26, 1998, West was indicted in the Circuit Court for Prince George's County on charges of kidnapping, carjacking, two counts of first degree assault, armed robbery, robbery, and two counts of using a handgun in the commission of a felony. In November 1998, a separate indictment in the Circuit Court for Prince George's County charged West with first degree rape and first degree sexual offense. All of the charges in the Prince George's County indictments, like the District of Columbia charges, were based on the events during the evening of October 17, 1997.

Both of the Prince George's County indictments were tried together before a jury in the Circuit Court for Prince George's County. At the close of the prosecution's case, West moved to dismiss the first degree rape and first degree sexual offense charges, arguing that the State of Maryland lacked territorial jurisdiction to prosecute him on these charges because the rape and the sexual offense occurred in the District of Columbia. The trial judge denied the motion, relying upon the Court of Special Appeals' opinion in *State v. Jones,* 51 Md. App. 321, 443 A.2d 967 (1982), vacated with directions to dismiss the appeal because there was no final judgment and therefore no appellate jurisdiction, *Jones v. State,* 298 Md. 634, 471 A.2d 1055 (1984). The trial judge also gave the jury an instruction on territorial jurisdiction, to which West objected.[3]

---

3. The trial judge's jury instruction on territorial jurisdiction was as follows:

"When the site or location of a crime or crimes is disputed, the issue of whether the crime or certain elements that occurred within the State of Maryland is a factual issue that must be decided beyond a reasonable doubt by you the jury.

The jury found that Maryland had territorial jurisdiction over all of the above-mentioned charges, and it found West guilty of each offense. West was sentenced to life imprisonment for first degree rape and a consecutive term of life imprisonment for the first degree sexual offense. He also received prison sentences of 30 years for kidnapping, 30 years for carjacking, 25 years for each of the first degree assault offenses, 20 years for armed robbery, and 20 years for each of the handgun offenses. The sentences for kidnapping, carjacking, armed robbery, and each of the handgun offenses were all consecutive. The only concurrent sentences were the two 25-year sentences for first degree assault. No sentence was imposed upon the robbery verdict because of merger.

West appealed to the Court of Special Appeals, arguing, *inter alia*, that the evidence was insufficient to establish Maryland territorial jurisdiction over the first degree rape and first degree sexual offense charges. West alternatively argued that, if a jury issue on territorial jurisdiction over these two offenses were presented, the trial court's instruction on territorial jurisdiction was erroneous. The Court of Special Appeals rejected West's contentions and affirmed. *West v. State*, 136 Md.App. 141, 764 A.2d 345 (2000). The intermediate appellate court primarily relied upon its earlier opinion in *State v. Jones, supra*, 51 Md.App. 321, 443 A.2d 967. While acknowledging that its opinion in *Jones* was a "departure" from the "traditional ... analysis" of territorial jurisdiction, the Court of Special Appeals seemed to rely on the idea that the "common law" does "evolve," *West v. State*, 136 Md.App. at 148, 764 A.2d at 349.

---

"It is not essential to criminal responsibility that the defendant perform ever[y] act necessary to accomplish the crimes within the geographical confines of Maryland.

"If you find beyond a reasonable doubt that some of the elements of these crimes occurred in Maryland and that they were part of a continuing course of conduct, including the remaining elements of those crimes occurring in another jurisdiction, the defendant may be found guilty of these offenses."

West filed in this Court a petition for a writ of certiorari, arguing (1) that the evidence was legally insufficient to establish Maryland's territorial jurisdiction over the rape and first degree sexual offense charges and (2) that, alternatively, if there were sufficient evidence for a jury issue regarding Maryland territorial jurisdiction over these two offenses, the trial judge's instruction was erroneous. This Court granted the certiorari petition, *West v. State,* 363 Md. 661, 770 A.2d 169 (2001). We shall reverse the rape and sexual offense convictions because the undisputed evidence shows, as a matter of Maryland common law, that the Circuit Court lacked territorial jurisdiction over these two offenses. Consequently, we need not consider the second issue concerning the jury instruction.

## II.

■ Preliminarily, we shall briefly discuss the reliance, by both the Circuit Court and the Court of Special Appeals, upon the latter court's opinion in *State v. Jones, supra,* 51 Md.App. 321, 443 A.2d 967, *vacated with directions to dismiss the appeal,* 298 Md. 634, 471 A.2d 1055. A Court of Special Appeals' opinion underlying a judgment, which is reversed or vacated in its entirety by this Court on another ground, may, depending upon the strength of its reasoning, constitute some persuasive authority in the same sense as other dicta may constitute persuasive authority. Nonetheless, analytically the intermediate appellate court's opinion is only dicta because it no longer supports or reflects a viable appellate judgment. *See, e.g., Eastgate Associates v. Apper,* 276 Md. 698, 704, 350 A.2d 661, 665 (1976). Accordingly, such an opinion is not a precedent for purposes of *stare decisis.*

As shown by the opening paragraph in this Court's *Jones v. State* opinion, 298 Md. at 635, 471 A.2d at 1056, the territorial jurisdiction issue in that case was deemed to be a sufficiently important question of Maryland law so as to warrant the issuance of a writ of certiorari, but the issue would remain unresolved because the Court of Special Appeals lacked jurisdiction in the case. Under these circumstances, the interme-

diate appellate court's opinion in *Jones* was in no manner an authoritative precedent, and the courts below in this case should not have viewed it as such.

### III.

We shall now address the merits of the territorial jurisdiction issue.

 Judge Cathell for the Court in *State v. Butler,* 353 Md. 67, 72–73, 724 A.2d 657, 660 (1999), described territorial jurisdiction as follows:

"Territorial jurisdiction describes the concept that only when an offense is committed within the boundaries of the court's jurisdictional geographic territory, which generally is within the boundaries of the respective states, may the case be tried in that state. * * * We said in *Bowen v. State,* 206 Md. 368, 375, 111 A.2d 844, 847 (1955), that 'an offense against the laws of the State of Maryland is punishable only when committed within its territory. A person cannot be convicted here for crimes committed in another state.' '

*See also* the recent discussion of the territorial jurisdiction concept by Judge Raker for the Court in *State v. Cain,* 360 Md. 205, 212–215, 757 A.2d 142, 145–147 (2000). Moreover, when the "evidence raises a genuine dispute" over Maryland's territorial jurisdiction, "territorial jurisdiction becomes an issue the State must prove," and it must prove it "beyond a reasonable doubt." *State v. Butler, supra,* 353 Md. at 79, 81, 724 A.2d at 663, 664.

Criminal offenses consist of multiple elements, and issues of territorial jurisdiction typically arise in this State when one or more elements of an offense take place in Maryland and one or more elements occur in another jurisdiction. The common law rule concerning territorial jurisdiction, which is adhered to in Maryland, does not permit prosecution of an offense in every jurisdiction in which any element of the offense takes place. Instead, the common law rule generally focuses on one element, which is deemed "essential" or "key" or "vital" or the "gravamen" of the offense, and the offense may be prosecuted

only in a jurisdiction where that essential or key element takes place.[4]

In *State v. Cain, supra,* 360 Md. at 214–215, 757 A.2d at 146–147, Judge Raker for the Court explained:

"It is sometimes stated that each offense has, for jurisdictional purposes, one key act or omission and that this element must have taken place in the state where prosecution is instituted. Professors LaFave and Scott state:

'At common law (that is, in the absence of a statute) jurisdiction over crimes is limited . . . by the notion that each crime has only one situs (or locus), and that only the place of the situs has jurisdiction. In other words, the common law picked out one particular act (or omission) as vital for the determination of the place of commission (i.e., the situs) of each of the various crimes and gave jurisdiction to that state (and only that state) where the vital act or result occurred. Generally, it may be said that the situs of a crime at common law is the place of the act (or omission) if the crime is defined only in these terms, and the place of the result if the definition of the crime includes such a result.'

"1 WAYNE R. LaFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 2.9(a), at 180 (1986).

\* \* \*

"The essential element of the crime of theft by deception, at least for jurisdictional purposes, is the accused's obtaining control of the subject property."

*See, e.g., State v. Butler, supra,* 353 Md. at 78, 724 A.2d at 662 ("our courts consistently have recognized that in order to satisfy the territorial jurisdiction requirement, the crime, or

---

4. In one sense, of course, all elements of a criminal offense are "essential" or "key" or "vital," as every element of a particular offense must be established in order to convict a defendant of that offense. In the context of territorial jurisdiction, however, the words "essential" or "key" or "vital" have been used to refer to one particular element which must be present in this State for a Maryland court to have territorial jurisdiction.

*essential* elements of it, must have occurred within the geographic territory of Maryland," emphasis added); *Wright v. State*, 339 Md. 399, 406 663 A.2d 590, 593 (1995) ("jurisdiction over a theft offense exists in this state if the defendant was subject to a duty to account for the property within this state. * * * The duty to account will sustain jurisdiction only where such a duty is an essential component of the crime"); *Pennington v. State*, 308 Md. 727, 730–732, 521 A.2d 1216, 1217–1218 (1987) (setting forth the common law rule, and delineating for several offenses the essential or vital element for purposes of territorial jurisdiction); *Urciolo v. State*, 272 Md. 607, 638–640, 325 A.2d 878, 896–897 (1974) (Maryland had no territorial jurisdiction over the embezzlement because, even though the intent element may have occurred in Maryland, there was no conversion or possession of the property in Maryland); *Goodman v. State*, 237 Md. 64, 66–67, 205 A.2d 53, 54–55 (1964) (Maryland lacked territorial jurisdiction over the offense of unlawfully obtaining, by misrepresentation, a narcotic drug because, although the misrepresentation and criminal intent occurred in Maryland, the unlawful obtention was in the District of Columbia); *Breeding v. State*, 220 Md. 193, 200, 151 A.2d 743, 747 (1959) (in a prosecution for murder by strangulation, the state where the strangulation took place has territorial jurisdiction over the offense); *Bowen v. State*, 206 Md. 368, 375, 379, 111 A.2d 844, 847, 849 (1955) ("The essential element in the crime of larceny after trust is the conversion," and since that occurred in the District of Columbia, "the Circuit Court for Montgomery County had no jurisdiction in this case"); *Kelley v. State*, 181 Md. 642, 647, 31 A.2d 614, 616 (1943) (For purposes of territorial jurisdiction over a homicide or assault, the "prevailing common-law [rule] is that the act is done where the physical contact between the person harmed and the outside force takes place"); *Stout v. State*, 76 Md. 317, 323, 25 A. 299, 301 (1892) (where Chief Judge Alvey for the Court stated that the place where "the blow" is "inflicted upon the party assaulted or mortally wounded" has territorial jurisdiction, and, as to homicide, not the place where death occurred).

 There are a few exceptions to the single element territorial jurisdiction principle, and in some circumstances we have indicated that there may be more than one "essential element" of an offense for purposes of territorial jurisdiction. Thus, in *Wright v. State, supra,* 339 Md. 399, 663 A.2d 590, the Court suggested that, with regard to theft based on larceny after trust, either the state where the conversion occurred or the state where there was a duty to account would have territorial jurisdiction. Furthermore, larceny may be prosecuted in any state into which the thief transports the stolen goods. *Pennington v. State, supra,* 308 Md. at 730 n. 3, 521 A.2d at 1217 n. 3; *Worthington v. State,* 58 Md. 403, 409–410 (1882) (stating, with regard to larceny, that "at common law, every asportation is a new taking"). Finally, with regard to certain offenses, "where causing a particular result constitutes an element of the offense" and "forms an essential ingredient of the offense," the state of the intended result may prosecute even if all of the other elements of the offense occurred elsewhere. *Pennington v. State, supra,* 308 Md. at 733–734, 521 A.2d at 1219.

As discussed by Judge Smith for the Court in *Pennington v. State, supra,* 308 Md. at 728–729 n. 2, 521 A.2d at 1216–1217 n. 2, many states have by statute expanded territorial criminal jurisdiction, so that, if *any* element of an offense takes place in the state, the state would have jurisdiction. Maryland, however, has not enacted such a statute. *See also* the discussion in *Trindle v. State,* 326 Md. 25, 39–44, 602 A.2d 1232, 1239–1241 (1992) (concurring and dissenting opinion).

 Turning to the case at bar, it is questionable whether *any* element of the first degree rape or first degree sexual offense occurred in Maryland. The State argues that

"four of the five elements of first degree rape were initiated in the state of Maryland. Although the vaginal intercourse did not take place until the car had crossed into the District of Columbia, the force was initiated in Maryland, the victim's consent was withheld in Maryland, her will was overcome in Maryland, and West displayed the gun in Maryland.

*See* Art. 27, § 462(a). With respect to the first degree sexual offense, although the sexual act itself—fellatio—did not occur until the car had reached the District of Columbia, force was used, consent was withheld, will was overcome, and a gun was displayed in Maryland. *See* § 464(a)" (Respondent's brief at 7).

While it is true that there may have been force, lack of victim's consent, overcoming of the victim's will, and display of a handgun in Maryland, these acts by the defendant in Maryland were associated with the kidnapping, carjacking, and robbery in Maryland, and with the kidnapping and carjacking as it continued into the District of Columbia. Under the facts disclosed by the prosecution's evidence, as well as the agreed "Statement of Facts" contained in the briefs filed in this Court, the force, lack of consent, and display of the handgun associated with the rape and first degree sexual offense took place entirely in the District of Columbia. As the previously cited cases in this Court make clear, Maryland has no territorial jurisdiction to prosecute an offense where *all* of the elements of that offense occur outside of Maryland.

■ Nonetheless, even if we assume *arguendo* that the force or threat of force and the lack of consent elements of the rape and the first degree sexual offense occurred, at least in part, in Maryland, this State still had no territorial jurisdiction over these two offenses. Rape and first degree sexual offense, like homicide offenses, are forms of aggravated assault. Maryland law is clear that the essential or key element of such offenses, for purposes of territorial jurisdiction, is the specifically proscribed harmful physical contact. *See, e.g., Pennington v. State, supra,* 308 Md. at 739, 521 A.2d at 1221–1222; *Breeding v. State, supra,* 220 Md. at 200, 151 A.2d at 747; *Kelley v. State,* 181 Md. at 647, 31 A.2d at 616; *Stout v. State,* 76 Md. at 323, 25 A. at 301. The proscribed harmful physical contact in rape—the gravamen of the crime—is the unlawful "vaginal intercourse." The proscribed and harmful contact in a first degree sexual offense is the coerced "sexual act." In this case, the proscribed contact, at which each statute was directed, took place entirely within the District of Columbia.

The State relies on several cases from other states involving rape or other forcible sexual offenses, where the force associated with the offense began in one state and the vaginal penetration or sexual act occurred in another state, and the courts upheld territorial jurisdiction in the state where the force commenced. These decisions, however, were all governed by statutes which expanded common law territorial jurisdiction. *See Bright v. State,* 490 A.2d 564, 567 (Del.1985) (statute provided that "[i]f any criminal offense is begun in this State and completed elsewhere, it shall be deemed to have been committed in this State,"); *State v. Gallup,* 520 S.W.2d 619, 622 (Mo.App.1975) (statute authorized prosecution " 'where any element of the offense occurred' "); *People v. Moore,* 566 N.Y.S.2d 674, 676, 170 A.D.2d 847, 848 (1991) (statute authorized prosecution if "an element" of the offense occurred in the state); *State v. Kelly,* 89 Ohio App.3d 320, 324–325, 624 N.E.2d 733, 736 (1993) (statute authorized prosecution if the defendant "commits an offense under the laws of this state, any element of which takes place in this state").

On the other hand, in rape or sexual offense cases in states where the common law principles of territorial jurisdiction have not been so expanded, and where force may begin in the forum state but the unlawful sexual intercourse or sexual act takes place in another state, courts have held that there is no territorial jurisdiction in the forum state. *See, e.g., People v. Holt,* 91 Ill.2d 480, 484–485, 64 Ill.Dec. 550, 440 N.E.2d 102, 104 (1982) (where the victim was kidnaped in Illinois and forcibly taken to Wisconsin where she was raped and murdered, Illinois had no territorial jurisdiction over the rape and murder); *State v. Baldwin,* 305 A.2d 555 (Me.1973) (victim in a rape case was taken in Maine and driven to the vicinity of the Maine–New Hampshire border, but the prosecution failed to prove that the unlawful sexual act occurred in Maine, and, therefore, Maine lacked territorial jurisdiction). *See also Gardner v. State,* 263 Ark. 739, 748, 569 S.W.2d 74, 78 (1978); *State v. Ramirez,* 92 N.M. 206, 585 P.2d 651 (1978).

Under Maryland common law principles of territorial jurisdiction, the offense of first degree rape and first degree sexual

offense were committed by the defendant West only in the District of Columbia. The Circuit Court for Prince George's County had no territorial jurisdiction over the two offenses. Although the General Assembly could by statute expand Maryland's territorial jurisdiction over a criminal offense if any element of that offense occurred in Maryland, it has not done so.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REVERSE THE JUDGMENTS OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY ON THE CHARGES OF FIRST DEGREE RAPE AND FIRST DEGREE SEXUAL OFFENSE, OTHERWISE TO AFFIRM THE JUDGMENTS OF THE CIRCUIT COURT, AND TO REMAND THE CASE TO THE CIRCUIT COURT WITH DIRECTIONS TO DISMISS THE CHARGES OF FIRST DEGREE RAPE AND FIRST DEGREE SEXUAL OFFENSE. COSTS IN THIS COURT TO BE PAID BY PRINCE GEORGE'S COUNTY. COSTS IN THE COURT OF SPECIAL APPEALS TO BE EVENLY DIVIDED BETWEEN THE PETITIONER AND PRINCE GEORGE'S COUNTY.*