IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 18, 2006 Session

## STATE OF TENNESSEE V. AUDRA LYNN JOHNSON

**Appeal from the Circuit Court for Montgomery County**
**No. 40400784    Michael R. Jones, Judge**

_____

**No. M2005-02855-CCA-R3-CD - Filed November 21, 2006**

_____

The Appellant, Audra Lynn Johnson, entered a best interest plea and reserved for appeal a certified question of law: whether the trial court possessed territorial jurisdiction to try the out-of-state defendant. We conclude that the trial court lacked territorial jurisdiction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Vacated and the Indictment is Dismissed.**

J. S. STEVE DANIEL, SR.J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

Roger E. Nell, District Public Defender, for the appellant, Audra Lynn Johnson.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; John Carney, District Attorney General; and C. Daniel Brollier, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Background

The Appellant, Audra Lynn Johnson, was indicted for second degree murder resulting from the unlawful distribution of a controlled substance, Fentanyl, which caused the death of the victim, Justin Lee Payne. The Appellant was unsuccessful in her motion to dismiss the indictment due to lack of territorial jurisdiction. The Appellant sought an interlocutory appeal from the trial court's denial of her motion to dismiss; however both this court and the Supreme Court denied permission to appeal. State v. Audra Lynn Johnson, No. M2005-00106-CCA-R9-CD (Tenn. Crim. App., Feb. 8, 2005) (Order), perm. to app. denied, (Tenn., May 9, 2005). Thereafter, the Appellant entered a plea of nolo contendere to the lesser offense of reckless homicide, and she received a six-year probated sentence. As part

of the plea agreement, the Appellant reserved the right to appeal the following certified question of law:

> That the trial court lacked territorial jurisdiction over the actions of defendant in that any and all actions of defendant occurred, if at all, solely and completely within the State of Indiana and that no action of defendant occurred within the State of Tennessee so that the trial court (and the State of Tennessee as a whole) lacked the authority and power to bring defendant before the bar within the State of Tennessee to prosecute her for the alleged offense and that the trial court erred by not dismissing the case for want of territorial jurisdiction pursuant to [the] United States Constitution (U.S. Const. art. III § 2, amend. VI, amend. XIV, *United States v. Guiteau*, 1 Mackey 498 (1882)), the Constitution of the State of Tennessee (Tenn. Const. art. I § 9, art. I § 8, *State v. Legg*, 9 S.W.3d 111 (Tenn. 1999), *Riley v. State*, 28 Tenn. 646 (1849), *State v. Smith*, 48 S.W.3d 159 (Tenn. Crim. App. 2000)), and Tennessee Statute (Tenn. Code Ann. § 39-11-103).

The Appellant allegedly sold Fentanyl patches to the victim in the State of Indiana on or about May 6, 2004. The victim subsequently traveled to Clarksville, Tennessee, where he died on May 8, 2004, in a motel room. The autopsy report confirmed that the victim overdosed on Fentanyl and alcohol. The victim was found with a Fentanyl patch in his mouth. The record does not establish that the Appellant knew the victim would travel to Tennessee, and she has never been in Tennessee.

The statute under which the Appellant was indicted, second degree murder, criminalizes "[a] killing of another which results from the unlawful distribution of any Schedule I or Schedule II drug when such drug is the proximate cause of the death of the user." Tenn. Code Ann. § 39-13-210(a)(2). Fentanyl is a Schedule II controlled substance. Tenn. Code Ann. § 39-17-408(c). The sole issue before this court is whether the trial court possessed territorial jurisdiction to try the Appellant for second degree murder. The issue has been properly certified pursuant to Rule 37(b)(2), Tennessee Rules of Criminal Procedure.

**Discussion**

Regarding jurisdiction, our supreme court has stated:

> "It is elementary that before a court may exercise judicial power to hear and determine a criminal prosecution, that court must possess three types of jurisdiction: jurisdiction over the defendant, jurisdiction over the alleged crime, and territorial jurisdiction. The basic requirement that a court possess territorial jurisdiction, which recognizes the power of a state to punish criminal conduct occurring within its borders, is embodied in the constitutional right to a trial 'by an impartial jury of the county in which the crime shall have been committed.' See Tenn. Const. art. I, see also U. S.

2

Const. Amend. VI. As such, the concept of territorial jurisdiction reflects that '[a] state's criminal law is of no force and effect beyond its territorial limits. . . .' See Coffee v. Peterbilt of Nashville, Inc., 795 S.W.2d 656, 658-59 (Tenn. 1990)."

State v. Legg, 9 S.W.3d 111, 114 (Tenn. 1999).

Both the United States and Tennessee Constitutions embody the concept that a state possesses the power to punish criminal conduct occurring within its borders. U.S. Const. art. III, § 2 ("The trial of all crimes . . . shall be held in the state where the said crimes shall have been committed."); U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed."); Tenn. Const. art. I, § 9 ("That in all criminal prosecutions, the accused hath the right to . . . a speedy and public trial, by an impartial jury of the county in which the crime shall have been committed.").

The law regarding territorial jurisdiction has been codified by the legislature in this State. The pertinent part of the territorial jurisdiction statute reads as follows: "When an offense is commenced outside this state and consummated in this state, the person committing the offense is liable for punishment in this state in the county in which the offense was consummated, unless otherwise provided by statute." Tenn. Code Ann. § 39-11-103(b)(1). As our Supreme Court recognized in Legg, this statute represents a modification of the common law requirement "that the *locus in quo* of the crime occur within Tennessee before territorial jurisdiction could attach." 9 S.W.3d at 114.[1] Tennessee's territorial jurisdiction statute allows for a defense if the person charged was outside the state when the offense was consummated. Tenn. Code Ann. § 39-11-103(b)(2). However, the defense is inapplicable if the person outside the state "used" "[a]n innocent or guilty agent" or "[o]ther means proceeding directly from the person" to perpetuate the crime. Tenn. Code Ann. § 39-11-103(b)(2)(A) and (B). Although neither of the above-quoted constitutional provisions distinguishes between the commencement and consummation of a criminal offense, the legislature contemplated occasions when the commission of an offense may span the border between Tennessee and other states.[2]

---

[1] Some states adhere to the common law rule regarding territorial jurisdiction, which dictates that the state in which the essential or vital element of the offense occurred possesses jurisdiction to prosecute the accused. See, e.g., West v. State, 797 A.2d 1278, 1283 (Md. 2002).

[2] Tennessee's territorial jurisdiction statute was originally codified in 1858. The original language of the statute remained unchanged until it was reworded as part of the 1989 criminal code revision. See Legg, 9 S.W.3d at 114-15 and n1. The original statute read as follows:

> When the commission of an offense commenced without this state is consummated within its boundaries, the person committing the offense is liable to punishment therefor in this state, although he was out of the state at the commission of the offense charged, if he consummated it in this state, through the intervention of an innocent or guilty agent, or by any other means proceeding directly from himself; and, in such case, the jurisdiction is

3

The criminal conduct in this case originated in Indiana. According to the State's position, although the sale of drugs occurred in Indiana, the offense of second degree murder was consummated in Clarksville, Montgomery County, where the victim was found dead with the drugs in his mouth. The Appellant disagrees, and argues that the offense was committed at the time of the sale of the Fentanyl. Because the Appellant pled to the lesser included offense, the facts are not at issue. The Appellant sold the drugs to the victim in Indiana. The Appellant did not enter Tennessee, and there is no evidence the Appellant knew the victim would travel to Tennessee. Thus, the question becomes where, under the terms of the territorial jurisdiction statute, was the offense of second degree murder consummated.

The Appellant argues that "murder is committed upon the striking of the blow (that is, the doing of the act by the defendant that leads to death), not the death itself." In support of her argument, the Appellant relies upon language from the Supreme Court's opinion in Edge v. State, 99 S.W. 1098 (Tenn. 1907). The defendant in that case was convicted as an accessory before the fact to the crime of second degree murder. The defendant transported a woman to North Carolina for an abortion, and upon their return to Tennessee, the woman died from complications associated with the apparent criminal act. Because the court concluded that the doctor who performed the abortion could not have been tried in Tennessee, the court reversed the defendant's accessory conviction. Interpreting the original version of the territorial jurisdiction statute, see note 2, supra, the court stated that "[a] careful scrutiny of this statute will show a definition of what is meant by the consummation of the crime in this State. It is not sufficient merely to show that the death ensued in this State as the result of a criminal act performed in another State, *but there must be some further intervention in this State, proceeding directly from the principal, through an innocent or guilty agent, or by some other means*." Id. at 1099 (emphasis added).

The State contends that the crime was consummated in Tennessee because this is where the death occurred. The State further argues that the victim was "an unsuspecting agent" who transported the Fentanyl into this state. According to the State's argument, the Appellant cannot rely upon the statutory defense, that she was outside the state when the offense was consummated, because her "criminal responsibility for the distribution of the drug continued until the drug was consumed and the victim was dead." In other words, the State seems to suggest that the offense of second degree murder in this case was a continuing offense.

In State v. Legg, our Supreme Court held that "when an offense is continuing in nature and has continued into Tennessee from another state, the offense is deemed to have both commenced and consummated anew in Tennessee so long as any essential element to the offense continues to be present in Tennessee." 9 S.W.3d at 116. The court stated that

in the county in which the offense was consummated, unless otherwise provided by law.

Tenn. Code Ann. § 40-1-102 (Supp. 1983).

4

its holding does not extend to non-continuing offenses. Id. at 116, n.3. "An offense may be considered a continuing offense only when 'the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that [the legislature] must assuredly have intended that it be treated as a continuing one.'" Id. at 116 (quoting Toussie v. United States, 397 U.S. 112 (1970)). In deciding whether an offense is a continuing one, the courts should "look to the statutory elements of the offense and determine whether the elements of the crime themselves contemplate *a continuing course of conduct*." Id. (emphasis added). Examples of offenses which the courts of this state have concluded are continuing include kidnapping, Id., driving under the influence, State v. Ford, 725 S.W.2d 689 (Tenn. Crim. App. 1986), stalking, State v. Hoxie, 963 S.W.2d 737 (Tenn. 1998), and child neglect, State v. Adams, 24 S.W.3d 289 (Tenn. 2000).

We are unaware of any authority that holds that second degree murder is a continuing offense, nor does the State cite to any. Moreover, we do not believe the language of the statute defining second degree murder compels such a conclusion. The killing of another person, the conduct which is penalized by the second degree murder statute, cannot be considered to be "a continuing course of conduct." Legg, 9 S.W.3d at 116. Accordingly, the State's position that second degree murder is a continuing offense is without merit. However, this does not end our inquiry.

A criminal offense is consummated when the last element necessary for commission of the crime is satisfied. Id. at 115. Similarly, Black's Law Dictionary defines "consummate" as: "to finish by completing what was intended; bring or carry to upmost point or degree; carry or bring to commission; finish; perfect; fulfill; achieve." 317 (6th ed. 1990). Second degree murder is defined in Tennessee in two manners: the knowing killing of another, or the killing of another resulting from the unlawful distribution of a controlled substance which is the proximate cause of death. Tenn. Code Ann. § 39-13-210(a).[3] The last element of the crime of second degree murder, prosecuted under either theory, is the death of the victim.

Because the death of the victim in this case occurred in Tennessee, we may conclude that the crime of second degree murder was consummated in this state. Legg, 9 S.W.3d at 115. Given the facts of this case, and the nature of the particular manner of second degree murder charged, Appellant's contention that the murder was committed when "the blow was struck," i.e., the sale of the Fentanyl, is without merit. However, as already discussed, subsection (b)(2) of section 39-11-103 clearly provides for a defense to prosecution when the person charged was located outside Tennessee when the offense was consummated inside this state. The person charged may rely on this defense to territorial jurisdiction unless that person "used" an innocent or guilty agent or some other means proceeding directly from the person to consummate the offense in this state. § 39-11-103(b)(2)(A) and (B).

---

[3] The Sentencing Commission Comments to § 39-13-210 state that the latter requires a reckless state of mind by a defendant who distributes the drugs.

When construing a statute, we must give effect to the ordinary meaning of the words used in the statute, and we must presume that each word used was purposely chosen by the legislature to convey a specific meaning. State v. Denton, 149 S.W.3d 1, 17 (Tenn. 2004) (citing State v. Jennings, 130 S.W.3d 43, 46 (Tenn. 2004)). "[C]ourts must 'presume that the legislature says in a statute what it means and means in a statute what it says there.'" Mooney v. Sneed, 30 S.W.3d 304, 307 (Tenn. 2000) (quoting BellSouth Telecomm., Inc. v. Greer, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997)). "Use" is defined, as a verb, as: "to put into action or service; employ for some purpose," Webster's II New Riverside Dictionary 744 (Revised ed. 1996), and "to make use of; to convert to one's service; to employ; to avail oneself of; to utilize; to carry out a purpose or action by means of," Black's Law Dictionary 1541 (6th ed. 1990). In other words, some affirmative action is required on the part of the person charged.

It is undisputed that the Appellant did not set foot in the State of Tennessee. The State asserts that the Appellant used an innocent agent, the victim in this case, to consummate the murder in Tennessee. The Appellant disagrees, stating that a victim cannot be a perpetrator's agent. Regardless of whether the victim could be considered an agent under the facts of this case, the statute requires an affirmative action on the part of the Appellant to effectuate the crime in Tennessee. The facts in this case do not establish that the Appellant intended the drugs to enter the State of Tennessee, nor is there any evidence in the record that the Appellant knew the victim was planning to travel to Tennessee.

Unlike the defendant in State v. Davis, No. E1999-00373-CCA-R3-CD, 2000 WL 1349263 (Tenn. Crim. App., Sept. 19, 2000), the Appellant herein did not "use" an agent or any other means to consummate the crime in Tennessee. In Davis, the defendant, who was located outside Tennessee, wrote checks drawn on a Tennessee bank to effect a theft of funds in escrow. As this court held, the defendant specifically intended to cause an effect in Tennessee and used innocent agents, the bank clerks, to accomplish the act. Similarly, the trial court in Richards v. State, 145 S.W.2d 772 (Tenn. 1940), possessed jurisdiction to try the out-of-state defendant for the crime of obtaining money in Tennessee under false pretenses. The defendant in that case was located in Kentucky; however, he sent an agent into Tennessee to obtain the money. Interpreting the earlier version of our territorial jurisdiction statute, the Supreme Court held: "it makes no difference that Richards remained in the State of Kentucky . . . [i]f the commission of the offense commenced in Kentucky and was consummated in Knox County, Tennessee, by the intervention of an agent sent by Richards." Id. at 772-73; State v. Basham, No. 87-18-I, 1989 WL 77 (Tenn., Jan. 3, 1989) (Supreme Court stated out-of-state defendant would have been found guilty of accessory before the fact of third degree burglary even had he not stepped foot in Tennessee when crimes were committed in-state by his co-defendants); Op. Tenn. Atty. Gen. No. 92-13, 1992 WL 544984 (Feb. 19, 1992).

These cases illustrate that a defendant must *utilize* some means, whether an agent or something else, to consummate the offense in this state.[4] The Appellant in this case did not utilize any means to consummate the crime in Tennessee. As the Appellant alleges on appeal, it was merely happenstance that the victim died in Clarksville while traveling through Tennessee. The Appellant did not employ the victim to travel here, and the record demonstrates that the Appellant did not even know the victim was planning to leave the State of Indiana.

We are persuaded by the statements of the Kansas Supreme Court in State v. Palermo, 579 P.2d 718, 720 (Kan. 1978). In that case, the defendant, who bought and sold drugs in a transaction in the State of Missouri, was charged in Kansas with the sale of drugs upon the subsequent resale of those same drugs in the State of Kansas. The Kansas Supreme Court concluded the trial court did not have jurisdiction to try the defendant.[5] There was no evidence that the defendant intended to sell the drugs in Kansas or that he had any idea the drugs would be resold in Kansas. In explaining the ruling, the Kansas court stated:

> Jurisdiction over a defendant for his criminal act exists because the act was committed, intended to be committed, or foreseeably could have been committed within the state seeking to prosecute the defendant. In Strassheim v. Daily, 221 U.S. 280, 285, 31 S.Ct. 558, 55 L.Ed. 735 (1910), the United States Supreme Court held that a state may prosecute an individual for acts done outside a jurisdiction when he intends to and does commit a crime within that jurisdiction. . . . We feel the natural corollary to this rule is that a state does not have jurisdiction over an individual for a crime committed within that state when he was located outside the state, did not intend to commit a crime within the state, and could not reasonably foresee that his act would cause, aid or abet in the commission of a crime within that state.

Id. at 720.

The defense contained in our territorial jurisdiction statute incorporates this reasoning. As our Supreme Court recognized long ago in Edge v. State, "[i]t is not sufficient merely to show that the death ensued in this State as the result of a criminal act performed in another State, but there must be some further intervention in this State, proceeding directly from the principal, through an innocent or guilty agent, or by some other means." 99 S.W. at 1099. The statute requires some affirmative action on the part of the defendant to effectuate the crime in Tennessee, which simply is not present in the case at hand. The Appellant did not intervene when the victim traveled to Tennessee, and she did not utilize any means to carry out the crime in this state. Accordingly, we find that territorial jurisdiction was not established as contemplated by the applicable statute.

---

[4] A case in which a person outside the state uses "other means" proceeding directly from the person would be similar to one wherein that person fires a gun across state lines to kill another person.

[5] Kansas has a similar territorial jurisdiction statute as Tennessee. See K.S.A. § 21-3104.

## Conclusion

Although the crime of second degree murder, as charged in this case, was consummated in the State of Tennessee, the trial court did not possess the requisite territorial jurisdiction to try the Appellant. We conclude that the Appellant did not use an innocent or guilty agent or some other means to consummate the crime in Tennessee. Tenn. Code Ann. § 39-11-103(b)(2). Therefore, because the Appellant was outside the state when the crime was consummated, the statutory jurisdictional defense to the indicted charge of second degree murder applies in this case. The judgment of the trial court is vacated and the indictment is dismissed.

_____
J.S. DANIEL, SENIOR JUDGE