912 A.2d 16

STATE of Maryland

v.

Raymond Leon ADAMS.

No. 617 Sept. Term, 2005.

Court of Special Appeals of Maryland.

Dec. 5, 2006.

Cathleen C. Brockmeyer (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, MD, for Appellant.

Bradford C. Peabody (Nancy S. Forster, Public Defender, on the brief), baltimore, MD, for Appellee.

Panel: DAVIS, KRAUSER and SHARER, JJ.

DAVIS, Judge.

Appellee, Raymond Leon Adams, was charged with multiple counts of first-degree rape and first-degree sexual assault, kidnapping, theft, and robbery with a dangerous and deadly weapon. Following a trial on December 3–7, 1979, appellee was found guilty on all counts. On January 18, 1980 and February 4, 1980, appellee was sentenced to life imprisonment for one count of first-degree rape and twenty-one concurrent life sentences for the remaining rape and sexual offenses, thirty consecutive years for kidnapping and a twenty-year

sentence for robbery, which was to be served consecutively to all the other sentences. This Court affirmed appellee's convictions in an unreported, *per curiam* opinion. *See Adams v. State,* No. 133, September Term, 1980 (filed October 16, 1980). The Court of Appeals denied appellee's *pro se* Petition for Writ of Certiorari on December 2, 1980. *Adams v. State,* 289 Md. 733 (1980).

On April 1, 2004, appellee filed a Petition for Post Conviction Relief in the Circuit Court for Prince George's County collaterally challenging his convictions under numbers 20,221, 20,494, 20,546 and 20,723. Subsequent to a hearing held on December 7, 2004 on appellee's post-conviction petition, the Petition for Relief pursuant to the Post Conviction Procedure Act was granted on April 5, 2005, by the court (Platt, J.), which ordered that Petitioner be awarded a new trial on all counts of the indictments. On May 4, 2005, the State filed its Application For Leave To Appeal and, on May 17, 2005, the State filed a Motion for Leave to File a Supplemental Application for Leave to Appeal.

This Court granted the State's timely Application for Leave to Appeal on October 18, 2005, presenting the following questions for our review:

I. Did the post conviction court err in rejecting the State's claim that appellee was procedurally barred from pursuing his substantive complaint as to the advisory nature of the jury instructions and, if not barred, did the trial court properly instruct the jury?

II. Did the post conviction court err in rejecting the State's claim that appellee was procedurally barred from pursuing his substantive complaint as to the court's failure to give proper instruction regarding jurisdiction and, if not barred, did the trial court properly instruct the jury?

III. Did the post conviction court err in finding that appellee's trial counsel was ineffective?

For the reasons which follow, we affirm the judgment of the circuit court.

## FACTUAL BACKGROUND

We considered, in appellee's direct appeal, whether the evidence presented at trial was sufficient to permit the trier of fact to determine that the events giving rise to his conviction occurred in Maryland. The facts upon which appellee's conviction were based, as recited by this Court in that appeal, are as follows:

On the evening of February 17, 1979, Kathy Phipps, along with her older sister, Teresa Bowen, was on the parking lot of the Prince George's Motor Lodge at approximately 10:00 p.m. The two sisters were returning to their car after having left a disco at Cuckoo's Nest. A black van approached and cornered the two of them against some parked cars. Three males got out of the van and approached the two women. [Appellee] was carrying a gun and ordered both women into the van, threatening to shoot them if they did not comply with his order. He grabbed Ms. Phipps. Ms. Bowen backed away and began to scream. As she did so, she saw [appellee] hit her sister over the head and then she heard her sister scream. She observed three males push Kathy into the van and drive off. It was undisputed that the location of the Prince George's Motor Lodge was in Prince George's County Maryland, and was located approximately one and one-half miles from the District of Columbia line.

Ms. Phipps testified that immediately after being forced into the van, she was ordered at gunpoint to remove her jewelry and did so. In leaving the Prince George's Motor Lodge, the van was heading along Branch Avenue in the general direction of Washington D.C. Shortly after removing her jewelry, Ms. Phipps was forced to remove her clothes. [Appellee] was the driver of the van. The passenger to the right front seat, on the direct order of [appellee], moved into the back of the van and started to pull Ms. Phipps clothes off when she was not moving fast enough in disrobing herself. The other passenger in the van then raped her.

[A] whole series of sexual attacks—rape, anal intercourse and fellatio at the hands of [appellee] himself; both passengers in the van and, later, a group of several other males during a stop at a parking lot—ensued. . . .

Immediately after Ms. Phipps' gold necklace and watch had been grabbed from her and various rings had been ripped off her fingers, the sexual assault began. She described all of this as taking "just a minute or so."

[S]hortly after the first rape, at gunpoint, was over, the van turned off of Branch Avenue, making a right-hand turn and went up a hill. Going the wrong way up a one-way street, it was involved in a minor accident. The whole series of sexual attacks of every variety by a number of parties followed. Ms. Phipps estimated that when the second attack began, approximately ten to fifteen minutes had already elapsed since the time of the initial kidnapping. She asked her abductors if they were still in Maryland, to which they replied affirmatively, but they laughed in the process of making the affirmative reply, leading her to doubt their truthfulness. At one point in her ordeal her various abductors had put a coat over her head so that she could not see anything. Ultimately she was threatened with death and then pushed out of the van, which resulted in her being in Prince George's County, Maryland. When she knocked on the door of an apartment house for assistance, it was the Prince George's County Police who responded. This was approximately 12:15 a.m., a little over two hours after she had been kidnapped.

Additionally, Teresa Brown identified William Raleigh Knight and appellee as the passenger in the back of the van and the driver of the van, respectively; she also identified appellee as the gunman at a line-up after he had been arrested. Kathy Phipps identified appellee's photo in an array shortly after the incident and also several days later; she later identified the pair at trial. Appellee had been seen by Officer Peter G. Serbinoff, a Washington D.C. police officer, in a van with octagonal windows, a CB antenna and wheels matching the description of the van that had been used in the offenses

at almost the same time the description was relayed over his radio. Inside of the van, the Washington D.C. Evidence Collection Unit found a white scarf and comb identified by Phipps as hers and three used prophylactics. At the conclusion of the evidence, it was stipulated that the medical evidence would show that Phipps had been vaginally and anally sexually assaulted.

Prior to closing argument by counsel, the trial judge gave the following instructions to the jury:

All right, ladies and gentlemen of the jury, the testimony in this case has been concluded, and prior to your listening to [State's Attorney] and [appellee's counsel] tell you what they think you ought to do in this particular case, I am going to instruct you and discuss with you the law about the case that we have just sat and listened to for the past five days.

Those of you who have sat previously as jurors in a criminal case know, and for those of you who have not sat previously and who do not know, that in our State, unlike [forty-eight] other states in our country, in a criminal case you as the jury sit not only as what we call the triers of fact, you also sit as what we call the judge of the law. And what this means, in essence, is that the facts in this case as you have sat and listened to for the past five days will be as you find them to be, and the law in this case will be as you find it to be. And because you are both the judges of the fact and the judges of the law anything that I may now tell you about either the facts or the law is purely advisory. You may disregard anything that I tell you, and you may pay absolutely no attention to what I tell you concerning either the facts or the law, with this one admonition concerning the law. You are not to apply the law as you think it ought to be or what it should be, but what it in fact is in this particular case.

And because you are the judges of the law [State's Attorney] and [appellee counsel] in their closing arguments to you may tell you what they think the law is in our State and how you should apply it in this particular case.

I, therefore, instruct you in an advisory capacity that in this case that you will sit on, that is of a criminal nature, the law places the burden on the State of Maryland to prove that the defendant, and in this case [appellee] is guilty beyond what we call a reasonable doubt. No defendant in any criminal case has to prove he is innocent. Accordingly, you will assume that [appellee] is innocent unless you are convinced from all the evidence in this case that you have heard for the past five days that he is guilty.

The trial court also instructed the jury:

I further instruct you in an advisory capacity that you have sat and listened to testimony in this case concerning identification of [appellee] by use of photographs and by use of a lineup. And in this regard I instruct you that the burden is also on the State of Maryland to prove to your satisfaction not only beyond a reasonable doubt that an offense was committed, but that [appellee] is the person that committed it and has been properly identified. An[d] whether or not he has been properly identified is, a question solely for you to determine, and you must be satisfied beyond a reasonable doubt as to the accuracy of the identification of [appellee] before you may convict him of any of these offenses.

And I, therefore, instruct you in an advisory capacity that a person who aids or abets the principal offender may be guilty of the principal offense, even though he or she did not personally commit each of the acts constituting the offense.

\* \* \*

I further instruct you in an advisory capacity that anything [State's Attorney] or [appellee's counsel] told you when this case started, anything that either of them are going to tell you after I conclude my instructions in this case, is not evidence.

I further advise you in an advisory capacity that you have the right to believe the testimony of any witness that you choose to believe, you may disbelieve the testimony of any witness that you choose to disbelieve . . . .

In response to the court's instructions, appellee's counsel said, "Note my exception to the Court not giving the requested reasonable doubt instruction I submitted." In response to the court's instruction that "this trial and your function as jurors is a search for the truth," appellee's counsel filed another exception, stating, "the trial is a determination as to whether or not the State has proven beyond a reasonable doubt that the defendant is guilty."

Finally, the following colloquy transpired:

[APPELLEE'S COUNSEL]: If the trial is a search for the truth—

THE COURT: What is a trial?

[APPELLEE'S COUNSEL]:—we would not be bound by any exclusionary rules. The trial is a determination in a given set of rules as to whether or not in a criminal case the prosecution has proven beyond a reasonable doubt that the defendant committed the crime alleged.

## POST CONVICTION PROCEEDING

At the conclusion of the hearing on appellee's Petition for Post Conviction Relief, the circuit court issued the following opinion, in pertinent part: [1]

A. "Advisory Only" Jury Instructions

The petitioner argues that the trial court's directive to the jury that its instructions were only advisory violated his right to due process. Specifically, the Petitioner provides that the trial court not only gave a blanket statement that the instructions were advisory but also repeatedly reminded the jury that the court's instructions were merely advisory. Thus, allowing the jury to disregard fundamental principles such as the State's burden to prove its case beyond a reasonable doubt, rendering the instructions constitutional.

---

1. Critical issue specific findings of fact and conclusions of law have been reproduced in the legal analysis, *infra,* where considered most effective. Section B, "Reasonable Doubt Instruction," contains a ruling adverse to appellee and forms no part of the issues on appeal and has therefore been deleted.

Since Petitioner's trial in 1979, there have been several state and federal decisions rendered regarding advisory jury instructions, which the Petitioner submits as authority to support his position. In *Stevenson v. State*, 289 Md. 167, 171, 423 A.2d 558, 560 (1980), the trial court instructed the jury that "anything which I may say about the law, including any instructions which I may give you, [are] merely advisory and you are not in any way bound by it." However, the trial "judge did not again mention that his statements concerning the law were for its guidance and not binding; rather he couched all of his remarks in mandatory language." *Stevenson*, 289 Md. at 171, 423 A.2d at 561. It is in this case that the Court of Appeals took the opportunity to explore the constitutionality of Article 23 of the Maryland Declaration of Rights.

The Court found that Article 23 did not violate the Due Process Clause of the Fourteenth Amendment because it only granted the jury the authority to decide " 'the law of the crime,' *Stevenson*, 289 Md. at 178, 423 A.2d at 564 (citing *Wheeler v. State*, 42 Md. 563, 570 (1875)), or 'the definition of the crime,' " as well as "the legal effect of the evidence." *Stevenson*, 289 Md. at 178, 423 A.2d at 564 (citing *Beard v. State*, 71 Md. 275, 280, 17 A. 10[44], 1045 (1889)). Thus, the Court of Appeals concluded, "it is not within the province of the jury to decide whether a statute has been repealed, whether it has operative effect or if it is unconstitutional." *Stevenson*, 289 Md. at 178, 423 A.2d at 564.

In *Montgomery v. State*, 292 Md. 84, [89–90], 437 A.2d 654, 657 (1981), the Court of Appeals found that "[i]t was error for the trial judge to tell the jury they could pay no attention to instructions on the law which did not pertain to the elements of the crime but which were standard instructions invoked to preserve the integrity of the judicial system and to assure the defendant a fair and impartial trial." The Court remanded the case for a new trial because there was no dispute as to the law of the crime and it was error to instruct the jury that instructions were non-binding.

As explained in *Guardino v. State,* 50 Md.App. 695, 702, 440 A.2d 1101, 1105 (1982), the teachings of *Stevenson* and *Montgomery* "are an affirmation of prior decisions, in accord with established law consistently followed by the Court of Appeals, even though not recognized in practice by many of the trial courts." Thus, neither case explicated a new rule but merely reaffirmed what has been consistently the law of the State of Maryland.

The law in Maryland is that the trial judge is charged with the duty to "delineate for the jury the following dichotomy: (i) that the jury, under Article 23, is the final arbiter of disputes as to the substantive 'law of the crime,' as well as the 'legal effects of the evidence,' and that any comments by the judge concerning these matters are advisory only; and (ii) that, by virtue of this same constitutional provision, all other aspects of the law are beyond the jury's pale, and that judge's comments on these matters are binding upon that body." *Stevenson v. State,* 289 Md. at 180, 423 A.2d at 565.

In the present case, the transcript is replete with instances of advisory instructions, which should have been binding on the jury and counsel. For example, the trial judge gave the following instruction:

(1) And because you are both the judges of the fact and the judges of the law anything that I may now tell you about either the facts or the law is purely advisory. You may disregard anything that I tell you, and you may pay absolutely no attention to what I tell you concerning either the facts or the law. . . .

(2) I, therefore, instruct you in an advisory capacity that in this case that you will sit on, that is of a criminal nature, the law placed the burden on the State of Maryland to prove that the defendant, and in this case [appellant], is guilty beyond what we call a reasonable doubt. . . .

(3) I further instruct you in an advisory capacity that anything [appellee's counsel] or [State's Attorney] told you when this case started, anything that either of

them is going to tell you after I conclude my instruction in this case, is not evidence.

The Court of Appeals has identified "certain bedrock characteristics ... which are indispensable to the integrity of every criminal trial, to wit:"

(1) The accused is presumed innocent until proven guilty by the State by evidence beyond a reasonable doubt.

(2) The state has the burden to produce evidence of each element of the crime establishing the defendant's guilt.

(3) The defendant does not have to testify and the jury may infer no guilt because of his silence.

(4) The evidence to impeach the defendant bears only on his credibility and may not be used to prove the substance of the offense.

(5) The evidence is limited to the testimony (and reasonable inferences therefrom) and the exhibits into evidence.

(6) Evidence does not include the remarks of the trial judge nor the arguments of counsel.

*Montgomery v. State*, 292 Md. at 91, 437 A.2d at 658.

"[T]he jury should not be informed that all of the court's instructions are merely advisory; rather only that portion of the charge addressed to the former areas of law [of the crime] may be regarded as non-binding." *Stevenson*, 289 Md. at 180, 423 A.2d at 565.

Finally, the Petitioner seeks reliance on *Jenkins v. Hutchinson*, 221 F.3d 679 (4th Cir.2000) as additional support for its position. In *Jenkins*, the Fourth Circuit held an advisory reasonable doubt instruction given pursuant to Maryland law violated the defendant's federal right to due process. In *Jenkins*, as in this case, the Petitioner argues, the trial court reminded the jury throughout the charge that the instructions were merely advisory. The *Jenkins* Court further applied its decision retroactively and overturned the conviction even though state law permitted the unconstitutional charge at the time of the trial. The Petitioner seeks to apply Jenkins to the instant case retroactively.

At the time of the Petitioner's trial in 1979, the law in Maryland was settled that the jury was the judge of the law as well as the facts. *See Giles v. State,* 229 Md. 370, 383, 183 A.2d 359, 365 (1962). However, because Article 24 of the Maryland Declaration of Rights provides the same protections as the Due Process Clause of the federal constitution, *see Bureau of Mines v. George's Creek,* 272 Md. 143, 156, 321 A.2d 748, 755 (1974) ("decisions of the Supreme Court on the Fourteenth Amendment are practically direct authorities" regarding Article 24), it is now clear for the first time after *Jenkins,* that Article 23 of the Maryland Declaration of Rights, requiring advisory only jury instructions, is inconsistent with Article 24 of the Maryland Declaration of Rights, assuring the Due Process of Law.

As the cases decided after Petitioner's trial demonstrate, the advisory jury instructions given in this case violated the Petitioner's right to due process. On direct appeal, the Petitioner could not have raised this claim because state law barred a challenge to the advisory only jury charge. Criminal Procedure Article § 7–106(b)(1)(i), provides that "an allegation of error is waived when a petitioner could have made but intelligently and knowingly failed to make the allegation before trial, on direct appeal," or in another applicable proceeding. Furthermore, a claim that otherwise may have been waived may be heard when there is a subsequent change in the law. Criminal Procedure § 7–106(c)(2). It is clear that in the present case that all the cases decided leading up to *Jenkins* materially changed the law governing the constitutionality of the advisory jury instruction, thus excusing any waiver.

This Court finds that the trial judge failed to delineate the dichotomy espoused in *Stevenson* because it instructed the jury that the instructions given were advisory and instructed the jury, through a blanket statement, that they could pay absolutely no attention to what the court's instructions were as to facts or law. Furthermore, this Court finds that in light of *Jenkins* the Petitioner's post conviction relief for a new trial must be granted.

\* \* \*

### Ineffective Assistance of Counsel

It is well settled that in determining whether counsel's assistance to a defendant in a criminal case was ineffective, this court must examine whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (19[84]). Under *Strickland,* a petitioner must show that trial counsel's performance was deficient; and the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052. It is not enough for the petitioner to show that the errors alleged had some conceivable effect on the outcome. *Harris v. State,* 303 Md. 685, 700, 496 A.2d 1074 (1985). The petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

In *Williams v. State,* 326 Md. 367, 375, 605 A.2d 103, 107 (1992), the court indicated "the prejudicial effect of counsel's deficient performance need not meet a preponderance of the evidence standard." Therefore, a defendant need only show that, based on counsel's errors, there is a "substantial or significant possibility that the verdict of the trier of fact would have been affected." *Williams,* 326 Md. at 375, 605 A.2d at 107. In effect, even a single serious error by counsel can provide a basis for a finding of ineffective assistance of counsel. *In re Parris W.,* 363 Md. 717, 726, 770 A.2d 202, 207 (2001). The Petitioner alleges several errors by counsel that render his assistance ineffective.

A. Failure to Object to the Trial Court's Instruction Based on a Venue Statute

As discussed previously, the trial court improperly instructed the jury that it could find that Maryland had territorial jurisdiction based on an inapplicable venue statute. The Petitioner argues that trial counsel was ineffective for failing to object to the erroneous instruction.

The facts are undisputed that the victim was abducted one and one-half miles from the District of Columbia. According to testimony during trial, the victim was put in a van and driven around for well over two hours. There is further evidence that the assailant believed that at some point during this two-hour period she was in the District of Columbia.

Based upon this, the Petitioner contends that there was a substantial probability or possibility that, had counsel objected to the erroneous venue instruction and requested a proper jurisdiction instruction, the jury would not have unanimously found, beyond a reasonable doubt, that the key elements of the offenses occurred in Maryland. This Court agrees. . Thus, the Petitioner is entitled to post-conviction relief as to Counts III, IV, V, VI, VII, VIII, IX, X, XI, XII and XIII.

B. Failure to Object to Erroneous Reasonable Doubt Instruction

As discussed herein, the trial court must provide an example or explanation of reasonable doubt upon the request of the accused. *Lansdowne v. State,* 287 Md. 232, 412 A.2d 88 (1980). The Petitioner argues that had counsel made a timely objection, the trial court would have been required to give an adequate explanation of reasonable doubt. However, *Lansdowne* only provides that a reasonable doubt instruction is inadequate when the defendant requests an explanation and the court does not provide one. While prudence may suggest that an explanation always be provided, *Lansdowne* does not make it mandatory. As this Court earlier concluded, it appears that the reasonable doubt instruction is adequate. The failure of the defense attorney to request an explanation of reasonable doubt does not by its very nature make the instruction inadequate. In *State v. Hunter,* the Court of Appeals recognized that the "Sixth Amendment does not require the best possible defense or that every attorney render a perfect defense. In order to be deficient, counsel's acts or omissions must be 'outside the wide range of professionally competent assis-

tance.'" 103 Md.App. 620, 623, 654 A.2d 886, 887 (1995) (citing *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052).

In the instant case, this Court finds that the trial counsel's performance was not deficient as to this issue and it is further held that Petitioner has failed to show that he was prejudiced by his trial counsel's failure to object to the court's Reasonable Doubt Instruction. Thus, Petitioner has failed to satisfy the two-prong test of *Strickland* and is therefore not entitled to Post Conviction Relief on this ground.

C. Failure to File a Motion for Modification of Sentence

Following the imposition of sentence in this case, Petitioner had the right to file, within ninety days (90) after sentencing, a Motion for Modification of Sentence. Md. Rule 4–345(b). Trial counsel did not do so. This failure, the Petitioner contends, amounts to ineffective assistance of counsel. As a result the Petitioner should be entitled to file a belated motion for modification of sentence. This Court agrees.

In *State v. Flansburg,* 345 Md. 694, 694 A.2d 462 (1997), the Court of Appeals held that the respondent was entitled to the effective assistance of counsel in filing a Motion for Modification of Sentence. The Court held that because respondent had a statutory right to counsel, he had the right to the effective assistance of counsel. *Flansburg,* 345 Md. at 703, 694 A.2d at 467. In addition, Md. Rule 4–214(b) provides:

When counsel is appointed by the Public Defender or by the court, representation extends to all stages in the proceedings, including but not limited to custody, interrogations, preliminary hearing, pretrial motions and hearings, trial, motions for modification or review of sentence or new trial, and appeal. The Public Defender may relieve appointed counsel and substitute new counsel for the defendant without order of court by giving notice of the substitution to the clerk of the court. Representation by the Public Defender's office may not be withdrawn until the appearance of that office has been stricken

pursuant to section (c) of this Rule. The representation of appointed counsel does not extend to the filing of subsequent discretionary proceedings including petition for writ of certiorari, petition to expunge records, and petition for post conviction relief.

As indicated by the Court of Appeals, the "phrase in Rule 4–214(b) motions for modification ... of sentence; seems to require representation by the Public Defender with regard to any and all timely motions for modification of sentence regardless of when they occur." *Flansburg*, 345 Md. at 701–02, 694 A.2d at 466.

Hence, pursuant to *Flansburg*, Petitioner was denied the effective assistance of counsel based upon trial counsel's failure to file a Motion for Modification of Sentence within ninety (90) days after sentencing. There was no risk that a greater sentence would be imposed. Therefore, the Petitioner's Post Conviction Relief is granted and Petitioner is entitled to a belated Motion for Modification of Sentence.

Accordingly, for the reasons stated above, it is this 5th day of April, 2005, by the Circuit Court for Prince George's County, Maryland,

ORDERED, that the Defendant's Petition for Post Conviction Relief is hereby GRANTED; and it is further

ORDERED that the Defendant is hereby GRANTED a New Trial on all Counts.

## LEGAL ANALYSIS

The State, on this appeal, assigns error to the grant of a new trial by the post conviction court upon consideration of appellee's Post Conviction Petition filed pursuant to the Postconviction Procedure Act, Md.Code, Criminal Procedure Article, § 7–102, *et. seq.*[2]

---

**2.** The Uniform Postconviction Procedure Act, § 7–102, affords relief in the following circumstances:

(a) In general. — Subject to subsection (b) of this section, §§ 7–103 and 7–104 of this subtitle and Subtitle 2 of this title, a convicted

 On appellate review of a decision by a post-conviction court, we will not disturb the court's first-level factual findings unless they are clearly erroneous. *Evans v. State, supra,* 151 Md.App. 365, 374, 827 A.2d 157 (2003); *State v. Jones,* 138 Md.App. 178, 209, 771 A.2d 407 (2001), *aff'd,* 379 Md. 704, 843 A.2d 778 (2004). Post conviction claims are resolved by consideration of the record at the original trial and the record of the post conviction proceeding.

## THE PARTIES' CONTENTIONS

The State contends first that, "because [appellee] failed to challenge the trial court's instructions on [his direct] appeal and because 7–106(c)(2) [3] is inapplicable, there is a rebuttable

person may begin a proceeding under this title in the circuit court for the county in which the conviction took place at any time if the person claims that:

(1) the sentence or judgment was imposed in violation of the Constitution of the United States or the Constitution or laws of the State;

(2) the court lacked jurisdiction to impose the sentence;

(3) the sentence exceeds the maximum allowed by law; or

(4) the sentence is otherwise subject to collateral attack on a ground of alleged error that would otherwise be available under a writ of habeas corpus, writ of coram nobis, or other common law or statutory remedy.

(b) A person may begin a proceeding under this title if:

(1) the person seeks to set aside or correct the judgment or sentence; and

(2) the alleged error has not been previously and finally litigated or waived in the proceeding resulting in the conviction or in any other proceeding that the person has taken to secure relief from the person's conviction.

3. The full text of Md.Code, Criminal Procedure Article, § 7–106, captioned Allegation of error, provides:

(a) For the purposes of this title, an allegation of error is finally litigated when:

(1) an appellate court of the State decides on the merits of the allegation:

(i) on direct appeal; or

(ii) on any consideration of an application for leave to appeal filed under § 7–109 of this subtitle; or

(2) a court of original jurisdiction, after a full and fair hearing, decides on the merits of the allegation in a petition for a writ of habeas corpus or a writ of error coram nobis, unless the decision on the merits of the petition is clearly erroneous.

presumption that appellee waived his current challenge and the post conviction court erred in finding non-waiver and, subsequently, granting him relief." [4]

> (b)(1)(i) Except as provided in subparagraph (ii) of this paragraph, an allegation of error is waived when a petitioner could have made but intelligently and knowingly failed to make the allegation:
> 1. before trial;
> 2. at trial;
> 3. on direct appeal, whether or not the petitioner took an appeal;
> 4. in an application for leave to appeal a conviction based on a guilty plea;
> 5. in a habeas corpus or coram nobis proceeding began by the petitioner;
> 6. in a prior petition under this subtitle; or
> 7. in any other proceeding that the petitioner began.
> (ii) 1. Failure to make an allegation of error shall be excused if special circumstances exist.
> 2. The petitioner has the burden of proving that special circumstances exist.
> (2) When a petitioner could have made an allegation of error at a proceeding set forth in paragraph (1)(i) of this subsection but did not make an allegation of error, there is a rebuttable presumption that the petitioner intelligently and knowingly failed to make the allegation.
> (c)(1) This subsection applies after a decision on the merits of an allegation of error or after a proceeding in which an allegation of error may have been waived.
> (2) Notwithstanding any other provision of this title, an allegation of error may not be considered to have been finally litigated or waived under this title if a court whose decisions are binding on the lower courts of the State holds that:
> (i) the Constitution of the United States or the Maryland Constitution imposes on State criminal proceedings a procedural or substantive standard not previously recognized; and
> (ii) the standard is intended to be applied retrospectively and would thereby affect the validity of the petitioner's conviction or sentence.
> (2001 Repl. Vol., 2006 Supp.)

4. More specifically, the State summarizes its first assignment of error in its brief:

> In granting [appellee's] relief on this issue, however, the post conviction court: 1) rejected the State's assertion that [appellee] had waived any ability to challenge this instruction in post conviction and erroneously concluded, without citation or authority, that: "On direct appeal, the petitioner could not have raised this claim because state law barred a challenge to the advisory only jury charge"; 2) improperly applied *Jenkins v. Hutchinson,* 221 F.3rd 679 (Fourth Cir. C.A., 2000) and 3) erroneously concluded that the court's instructions were "replete with instances of advisory instructions."

In support of its assertion that the court's ruling of non-waiver was error, the State argues that Jenkins did not issue new law. Rather, the decision, says the State, was not changed by the Fourth Circuit nor did Maryland law bar challenges to advisory jury instructions. Appellee could have, as did the appellant, in *Stevenson v. State*, 289 Md. 167, 423 A.2d 558 (1980), challenge the trial court's failure to give a requested instruction that it was the juror's duty to "follow the law as stated in the instructions of the court." Concluding that "Stevenson was not then barred from raising the very same challenge to the court's instructions that Adams now makes twenty-five years later," the State urges that appellant could have likewise raised the issue and failure to do so constitutes waiver.

Alternatively, the State argues that the jury instructions given at appellee's trial, "while at times couched in advisory terms, were sufficient, when read in their totality, to inform a jury that its function as judges of the law was limited." The instructions must not be taken out of context to determine adequacy, but determined by viewing the instructions as a whole.

Appellee countered, in the post conviction hearing and on this appeal, that the trial court instructions were improper because they were advisory in nature and that he did not waive his right to challenge the advisory nature of the jury instructions on appeal because State law barred any challenge to advisory only charges. Appellee further responds that, in *Jenkins*, the Fourth Circuit ruled that [appellee's] due process rights were violated and should be applied retrospectively.

# I

Maryland Declaration of Rights, Article 23, captioned, "Jury judges of law ...," provides:

> In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction.

### A.

## WAIVER: CONSTITUTIONALITY OF ARTICLE 23

As noted, referring to the assertion in appellee's petition that "state law barred a challenge to the advisory only jury charge," and hence appellee could not have previously raised the claim, the State retorts that, pending in the Court of Appeals at the time of appellee's trial was the case of Dorothy Stevenson, who, like appellee, was tried by a jury which had been instructed that it was the judge of the law as well as the facts. *Stevenson, supra,* 289 Md. 167, 423 A.2d 558. The Court of Appeals had

> granted *certiorari* in this criminal cause "limited solely to the question whether the trial court denied (the accused) the right to due process guaranteed by the XIV Amendment (to the United States Constitution) when it gave advisory rather than binding (jury) instructions." In other words, our review here is confined to whether Article 23 of the Declaration of Rights to the Maryland Constitution, which provides that the jury in a criminal case "shall be the Judges of Law, as well as of fact," is unconstitutional because the provision, as construed by this Court, facially deprives a defendant of the federally secured right to due process of law.

*Id.* at 169, 423 A.2d 558.

The Court issued its decision in *Stevenson* on December 17, 1980, fifteen days after the Court of Appeals denied appellee's *pro se* petition for *certiorari*. Moreover, as appellee points out, the Court of Appeals did not pass judgment on the instructions actually given, but merely held that there was no bar to her pursuing as an issue on appeal, her claim that the advisory nature of the instructions rendered them unconstitutional under the Due Process Clause of the Fourteenth Amendment.

Although agreeing with *Stevenson* that the Supreme Court, in *Sparf v. United States,* 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (1895), limited the role of juries in federal criminal trials to questions of fact, the Court of Appeals concluded that it did

not believe that *Sparf* did so because it was a constitutionally required aspect of the jury trial right. *Stevenson,* 289 Md. at 184, 423 A.2d 558. The *Stevenson* Court therefore concluded, "While this court recognizes that the Supreme Court has yet to decide whether the remaining element of trial by jury identified in *Sparf* juries as triers of fact only and not judges of law is still a necessary component of the sixth amendment (if it ever was), it seems to us quite unlikely, in light of the standard adopted in *Williams* and *Apodaca [v. Oregon,* 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972)], *i.e.,* is the feature essential to the function and purpose of a jury, that the court would still continue its fact-law distinction." *Id.* at 187, 423 A.2d 558.

The Court posited that the further reason *"to question whether the Sparf requirement will be imposed on state criminal proceedings as a matter of due process"* is the fact that Supreme Court decisions have suggested that states be permitted to experiment with the actual operation of juries "so long as the fundamental purpose of the right safeguarding the accused against official oppression remains intact." *Id.* (citations omitted)(emphasis added). The Court of Appeals concluded, "Consequently, since Maryland's constitutional provision, making juries judges of the law, enhances the purpose of trial by jury interposing a neutral interpreter of the law between the accused and the accusing government, . . . *we hold that this provision of our organic law does not violate the Sixth Amendment right to trial by jury as it applies to criminal trials in this state under the Due Process Clause of the Fourteenth Amendment."* *Id.* at 188, 423 A.2d 558 (emphasis added)(internal citations omitted).

The *Stevenson* Court ultimately concluded:

Implicit in the decisions of this Court limiting the jury's judicial role to the "law of the crime" is a recognition that all other legal issues are for the judge alone to decide. Because of this division of the law-judging function between judge and jury, it is incumbent upon a trial judge to carefully delineate for the jury the following dichotomy: (i) *that the jury, under Article 23, is the final arbiter of*

*disputes as to the substantive "law of the crime," as well as the "legal effect of the evidence," and that any comments by the judge concerning these matters are advisory only;* and (ii) that, by virtue of this same constitutional provision, all other aspects of law (*e.g.,* the burden of proof, the requirement of unanimity, the validity of a statute) are beyond the jury's pale, and that the judge's comments on these matters are binding upon that body. In other words, the jury should not be informed that all of the court's instructions are merely advisory; rather only that portion of the charge addressed to the former areas of "law" may be regarded as non-binding by it, and it is only these aspects of the "law" which counsel may dispute in their respective arguments to the jury. On the other hand, the jury should be informed that the judge's charge with regard to any other legal matter is binding and may not be disregarded by it. An explicit example of this may be seen from an examination of this Court's recent opinion in *Lewis v. State, supra*[, 285 Md. 705, 404 A.2d 1073], where we held that, although both a judge and the jury may be called upon to determine the voluntariness of a confession, instructions to the jury with respect to the type of consideration to be given by that body to such a confession are binding on it since admissibility of evidence is not "law" which the jury may decide. (Emphasis added).

On December 4, 1981, almost one year to the day after the Court of Appeals issued its decision in *Stevenson,* the Court penned *Montgomery,* 292 Md. at 91, 437 A.2d 654. There, the Court reaffirmed certain "bedrock" principles embodying due process requirements which were held to be binding upon the jury: that a defendant is presumed innocent until proved guilty by the State by evidence beyond a reasonable doubt; that the State has the burden to produce evidence of each element of the crime establishing the defendant's guilt; that the defendant does not have to testify and the jury may infer no guilt because of his silence; that evidence to impeach the defendant bears only on his credibility and may not be used to prove the substance of the offense; that evidence is limited to

the testimony (and reasonable inferences therefrom) and the exhibits admitted into evidence; that evidence does not include the remarks of the trial judge nor the arguments of counsel; and that evidence does not include the remarks of the trial judge nor the arguments of counsel. *Id.* at 88–89, 437 A.2d 654.

Concluding that "the trial judge muddled the judge/jury dichotomy and erred in instructing the jury as to its role as trier of the law and the facts," the *Montgomery* Court declared that "instructions on these 'bedrock' principles are not 'the law of the crime;' they are not advisory; and they cannot be the subject of debate by counsel before the jury. They are binding. They are the guidelines of due process to which every jury is required to adhere." *Id.* at 91, 437 A.2d 654. It was error, therefore, for the trial judge to tell the jury that it could pay no attention to instructions on the law which did not pertain to the elements of the crime but which were standard instructions invoked to preserve the integrity of the judicial system and to assure the defendant a fair and impartial trial.

Reasserting its holding in *Stevenson*, the Court in *Montgomery* reasoned:

As we see it, then, an instruction on the law of the crime must contain a definition or explanation of the offense charged in language setting forth the essential elements thereof, along with such additional explanation of the law pertaining to the criminal agency of the accused as may be necessary. Furthermore, we wish to make clear that, under Article 23 of the Md. Declaration of Rights, the application of Md. Rule 757b, which provides, in part, that

(i)n every case in which instructions are given to the jury the court shall instruct the jury that *they are the judges of the law and that the court's instructions are advisory only*

is limited to those instances when the jury is the final arbiter of the law of the crime. Such instances arise when an instruction culminates in a dispute as to the proper interpretation of the law of the crime for which there is a

sound basis. Under such circumstances, counsel are granted leave to argue contrary to the court's instruction on the law of the crime and this is the occasion when Article 23 and Rule 757 b require the court's instruction to be advisory. Even here, counsel may not in their arguments attempt to persuade the jury to enact new law or repeal or ignore existing law. However, in those circumstances where there is no dispute nor a sound basis for a dispute as to the law of the crime, the court's instructions are binding on the jury and counsel as well.

*Id.* at 88–89, 437 A.2d 654 (emphasis added).

Notably, foreshadowing later developments in the law, Judge Eldridge, in a concurring opinion joined by Judge Davidson, opined:

However, with respect to Part I of the Court's opinion, I continue to adhere to the views expressed in my dissenting opinion in *Stevenson v. State,* 289 Md. 167, 189–204, 423 A.2d 558, 570–577 (1980).

Specifically, I believe that Article 23 of the Maryland Declaration of Rights, and those portions of Maryland Rule 757 b and g implementing Article 23, violate the Fourteenth and Sixth Amendments to the United States Constitution. *See* 289 Md. at 191–194, 423 A.2d 558. Article 23, by authorizing a criminal jury in certain limited circumstances to disregard legally correct instructions, and find the law to be otherwise than it is, abridges a defendant's right to be tried in accordance with the law of the jurisdiction and thus violates the Due Process Clause of the Fourteenth Amendment. Moreover, Article 23 is inconsistent with the proper role of a criminal jury under the jury trial clause of the Sixth Amendment, applicable to state proceedings by virtue of the Fourteenth Amendment. *See Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), and *Sparf v. United States,* 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (1895). Consequently, in my opinion, *under no circum-*

*stances should a jury in a criminal case be told that it is the judge of the law.*

*Id.* at 96, 437 A.2d 654 (emphasis added).

Recapitulating the role of the jury as judge of the law as articulated by *Stevenson* and *Montgomery,* the Court, in *Guardino,* 50 Md.App. at 699–703, 440 A.2d 1101, summed up the then state of the law:

> The same day the jury in the case before us was charged, the Court of Appeals decided *Stevenson v. State,* 289 Md. 167, 423 A.2d 558 (1980). *Stevenson* declared that
>
>> "the jury was not granted, by Article 23, the power to decide all matters that may be correctly included under the generic label-'law.' Rather, its authority is limited to deciding 'the law of the crime,' ... or 'the definition of the crime,' as well as 'the legal effect of the evidence before (the jury).' ... And this Court has consistently interpreted this constitutional provision as restraining the jury's law deciding power to this limited, albeit important, area." *Id.* at 178, 423 A.2d at 564 (citations omitted).

From the preceding discussion, at the time that the Court of Appeals denied appellee's petition for *certiorari,* no Maryland appellate decisions, nor any other binding authority, had either found the provisions of Article 23 of the Maryland Declaration of Rights, conferring upon juries in criminal trials the authority to be the judge of the law as well as well as the facts, a violation of the Due Process Clause of the Fourteenth Amendment. Neither *Stevenson, Montgomery* nor *Guardino* recognized that Article 23 was unconstitutional, in violation of the due process clause of the federal constitution. And, of particular note, is how definitive had been the body of Maryland case law upon which these decisions had been grounded.

In *Giles v. State,* 229 Md. 370, 183 A.2d 359 (1962), the Maryland Court of Appeals considered and upheld the constitutionality of section 5, on due process and equal protection grounds; subsequently, the Supreme Court dismissed Giles' challenge to section 5 "for want of a substantial federal question." *Giles v. Maryland,* 372 U.S. 767, 83 S.Ct. 1102, 10

L.Ed.2d 137 (1963). Without questioning the constitutionality of section 5, the Supreme Court in *Brady,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), commented that "in making juries in criminal cases 'the Judges of Law,' the provision 'does not mean precisely what it seems to say,' " 373 U.S. at 89, 83 S.Ct. at 1198.

In 1967, in *Wyley v. Warden, Md. Penitentiary,* 372 F.2d 742, 744 (1967), the United States Court of Appeals for the Fourth Circuit held that informing the jury that the reasonable doubt instruction was "advisory" did not violate due process. Citing *Slansky v. State,* 192 Md. 94, 63 A.2d 599 (1949), the Court observed, "[e]very time the issue (whether the "advisory only" instruction violated due process) has been raised, the Court of Appeals of Maryland has affirmed the constitutionality of section 5 without qualification." *Wyley* observed that, after a comprehensive and thorough analysis, tracing the historical development of the rule, "the [*Slansky*] court concluded that, although section 5 was anachronistic, it was not unconstitutional." *Wyley,* 372 F.2d at 744. The *Wyley* decision concluded, "Not only has the validity of Article XV, section 5 been repeatedly upheld by the state court, but the Supreme Court of the United States has had occasion to consider it, and failed to intimate any doubt of its constitutionality. In *Giles v. Maryland,* 372 U.S. 767, 83 S.Ct. 1102, 10 L.Ed.2d 137 (1963), the Court dismissed an appeal, which raised this issue along with others, "for want of a substantial federal question." *Wyley,* 372 F.2d at 745.

Commenting on *Giles* and *Brady,* the Fourth Circuit Court of Appeals observed that "the action in [those decisions] would not preclude the Court on more thorough consideration in a direct attack from reaching the opposite conclusion, *but we cannot disregard the strong implications flowing from the fact that in its past decisions the Supreme Court perceived no invasion of a defendant's rights by the procedure established in section 5.*" *Id.* (emphasis added).

In 1976, the United States District Court for the District of Maryland held that the "advisory only" instruction did not

violate the Due Process Clause and that decision was affirmed by the Fourth Circuit Court of Appeals. *Wilkins v. State,* 402 F.Supp. 76, 82 (D.C.Md.1975). Reasserting the *Wyley* decision, the Court in *Wilkins* concluded:

> Petitioner's fourth argument is that the standard Maryland instruction that the jury is the judge of both the facts and the law is unconstitutional. *See* Maryland Constitution, Art. XV, Sec. 5. Precisely this argument was raised in *Giles v. Maryland,* 372 U.S. 767, 83 S.Ct. 1102, 10 L.Ed.2d 137 (1963), and the Supreme Court, by *per curiam* opinion, granted a motion to dismiss the appeal 'for want of a substantial federal question.' Moreover, this argument was carefully considered and rejected by the Fourth Circuit in *Wyley v. Warden,* Maryland Penitentiary, 372 F.2d 742 (4th Cir.1967), *cert. denied,* 389 U.S. 863, 88 S.Ct. 121, 19 L.Ed.2d 131 (1967), *aff'g* 254 F.Supp. 727 (D.Md.1966). Had the prosecution argued unconstitutional legal propositions to the jury, in order to subvert the valid instruction of the trial judge, this court might take a different view of this petition, but as no such improper arguments were made, the petitioner's argument is without merit.

■ The foregoing discussion controverts the State's assertion that appellee's failure to challenge the court's instructions on appeal created a rebuttable presumption that he has waived his current challenge. In the case at hand, appellee's convictions became final on December 2, 1980, when his petition for a writ of *certiorari* to the Maryland Court of Appeals was denied. As noted, the opinion in *Stevenson,* issued on December 17, 1980 followed by *Montgomery* on December 4, 1981 and *Guardino* on February 5, 1982. In an attempt to bolster the majority opinion against the robust arguments in the dissenting opinion, the *Stevenson* decision specifically noted that there had been no claim that the instructions in *Stevenson* were prejudicial; rather, the appeal sought to challenge the constitutionality of Article 23 itself.

In light of the holdings in *Stevenson, Montgomery* and *Guardino,* it is beyond cavil that state law barred appellee's

claim that the trial court's "advisory only" instruction violated his right to due process under the Fourteenth Amendment to the United States Constitution.

## B.

## NEW RULE

On July 31, 2000, the United States Court of Appeals for the Fourth Circuit issued its opinion *in Jenkins, supra.* Jenkins had been convicted by a jury in the Circuit Court for Prince George's County of robbery with a deadly weapon and related offenses and had received a sentence of thirty-five years. After his convictions were affirmed by this Court and his petition for a writ of *certiorari* denied by the Court of Appeals on July 25, 1976, he filed numerous petitions in state court seeking *habeas corpus* and post conviction relief, all of which were denied. In its denial of Jenkins' fifth *habeas corpus* petition, the circuit court, citing *Schanker v. State,* 208 Md. 15, 116 A.2d 363 (1955) and *Dillon v. State,* 277 Md. 571, 357 A.2d 360 (1976), issued an order, the full text of which read: "Under the almost unique, Maryland Constitutional provision, Article 23 of the Declaration of Rights, any instructions in criminal cases on the law, which the court may give are purely advisory and the court may so inform the jury. Therefore, this contention is without merit."

Jenkins then filed a *habeas corpus* action in federal court in which he argued, *inter alia,* that the advisory nature of the reasonable doubt instruction relieved the State of its burden to prove every element of the charged offenses beyond a reasonable doubt, thereby violating his right to due process. The federal district court denied relief as to all claims except the advisory jury instruction issue. The State appealed, arguing that Jenkins' claim is procedurally defaulted and that, if not defaulted, the claim is subject to the "new rule" doctrine of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

The Fourth Circuit explained that it rendered its decision based on the then existing law in reaching its conclusion that Article 23 did not violate the Fourteenth Amendment:

> First, *Wyley* was decided before *Winship.* Thus, when we decided *Wyley,* we did not yet have the benefit of the Supreme Court's holding that a jury must find the defendant guilty beyond a reasonable doubt in order to comply with the federal Constitution. *Cf. Etheridge v. Norfolk & W. Ry. Co.,* 9 F.3d 1087, 1090 (4th Cir.1993) (stating that "[a] decision of a panel of this court becomes the law of the circuit and is binding on other panels unless it is overruled by a subsequent en banc opinion of this court or a superseding contrary decision of the Supreme Court" (emphasis added) (internal quotation marks omitted)).
>
> Second, in *Wyley* we primarily addressed the issue of whether the provision of the Maryland Constitution was constitutional on its face. Only at the end of our *Wyley* opinion did we state: "Moreover, our reluctance to intervene on the present record is heightened by the absence of any suggestion that this particular defendant was prejudiced by the court's advising the jury of its right to determine the law for itself." *Wyley,* 372 F.2d at 747. However, the Supreme Court has subsequently held that an error in an instruction that relieves the State of its burden of proof beyond a reasonable doubt can never be harmless.

*Jenkins,* 221 F.3d at 685 (citations omitted).

The Court in *Jenkins* discussed the importance of the Supreme Court's decision in *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990).

> At issue in *Cage* was the substance of a reasonable doubt instruction: The defendant argued that the definition of "reasonable doubt" given by the trial court was incorrect and consequently had the effect of reducing the State's burden of proof. The Court agreed, holding that the state trial court had incorrectly "equated a reasonable doubt with a 'grave uncertainty' and an 'actual substantial doubt.'" *Cage,* 498 U.S. at 41, 111 S.Ct. 328, 112 L.Ed.2d 339.

Before Cage, *the Court had never held that a definition of "reasonable doubt" violated due process, and we therefore concluded that "[w]hether a trial court's unconstitutional misdescription of the burden of proof in a criminal case violates the Due Process Clause was certainly an open question."* Adams v. Aiken, 41 F.3d 175, 178 (4th Cir.1994).

\* \* \*

The issue here, in contrast, is whether the jury was effectively given any reasonable doubt instruction at all; for if the jury understood the advisory nature of the instructions as permitting it to ignore the reasonable doubt instruction, then the jury could fashion any standard of proof that it liked. *That the jury must be instructed that the Government is required to prove the defendant's guilt "beyond a reasonable doubt" was not an open question after Winship.*

*Jenkins,* 221 F.3d at 684 (emphasis added).

The seminal case, referred to in the above excerpt from *Jenkins,* establishing that any provision of law which relieves the prosecution of its burden of proof of every element of a crime beyond a reasonable doubt implicates the due process clause of the Fourteenth Amendment, *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970),[5] had been decided

---

5. In 1975, the Supreme Court, in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), based on *In re Winship,* eschewed the common law practice of placing the burden of proving heat of passion on sudden provocation on the defendant, holding, "... the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." 421 U.S. at 704, 95 S.Ct. at 1892. The *Mullaney* decision resulted in a spate of appeals in Maryland, which had recognized the presumption of malice in homicide cases once the prosecutor proved the accused committed the homicide, thereby shifting the burden to prove justification, excuse or alleviation to the defendant. *See Evans v. State,* 304 Md. 487, 550–51, 499 A.2d 1261 (1985) (McAuliffe, J., dissenting) (reasoning that "the basic principles of [due process as explicated in *In re Winship, Mullaney* and *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)] requires that the burden of persuasion on this ultimate issue must be upon the State, and the jury must be persuaded beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating circumstances before the penalty of death can be imposed")

six years before *Wilkins.* There the Court announced what would become an indefatigable pillar in the annals of constitutional law:

> *Due process commands that no man shall lose his liberty unless the Government has borne the burden of ... convincing the fact finder of his guilt.*
>
> * * *
>
> Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

*Id.* at 364, 90 S.Ct. at 1072–73 (emphasis added).

The Fourth Circuit Court of Appeals, after summarily disposing of the State's argument that Jenkins had defaulted his claim by failing to object, reasoned that the court had not ruled that the claim was waived. The Fourth Circuit held that the lower court had reached the merits, then considered the State's argument, based on *Teague.* That argument was that a holding that a reasonable doubt instruction violated the Due Process Clause constituted a "new rule" that cannot be applied retroactively to cases pending on collateral review. The Court then delineated the application of the *Teague* threshold inquiry:

> First, we must determine the date on which Jenkins' convictions became final. Second, we must determine

---

Accord *e.g. Miller v. State,* 380 Md. 1, 59, 843 A.2d 803 (2004). Thus, the ripple effect of the *In re Winship* pronouncement was tumultuous in the prosecution of homicide cases and the attendant appeals in 1975, beginning most notably with our decisions in *Evans v. State,* 28 Md. App. 640, 658, n. 4, 349 A.2d 300 (1975); *Shuck v. State,* 29 Md.App. 33, 40–45, 349 A.2d 378 (1975), *cert. denied,* 278 Md. 735 (1976); *Wentworth v. State,* 29 Md.App. 110, 120–121, 349 A.2d 421 (1975), *cert. denied,* 278 Md. 735 (1976); and *Law v. State,* 29 Md.App. 457, 463–465, 349 A.2d 295 (1975), *cert. denied,* 278 Md. 726 (1976). Patently, that due process was violated in any case in which the prosecution was relieved of its burden of persuasion under *In re Winship* in these Maryland decisions based on *Mullaney* is beyond cavil.

whether "a state court considering [Jenkins'] claim at the time his conviction[s] became final would have felt compelled by existing precedent" to conclude that the Constitution mandates a holding in his favor; if not, then the rule he seeks is a new one. *Id.* [*O'Dell v. Netherland,* 521 U.S. 151,] at 156, 117 S.Ct. 1969[, 138 L.Ed.2d 351 (1997)] (internal quotation marks omitted); *see Gilmore v. Taylor,* 508 U.S. 333, 340, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993) (stating that "put meaningfully for the majority of cases, a decision announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final" (internal quotation marks omitted)); *Butler v. McKellar,* 494 U.S. 407, 415, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990) (characterizing a new rule as one that is "susceptible to debate among reasonable minds"). If we determine that the rule is new, the final step is to determine if the rule "falls within one of the two narrow exceptions to the *Teague* doctrine." *O'Dell,* 521 U.S. at 156–57, 117 S.Ct. 1969, 138 L.Ed.2d 351.

*Jenkins,* 221 F.3d at 683.

In applying the *Teague* formula to the *Jenkins* case, the Court concluded:

Jenkins' convictions became final in October 1976. Thus, the relevant inquiry for *Teague* purposes is whether a holding in favor of Jenkins was dictated by precedent existing in October 1976. Jenkins would have us hold that by informing the jury that its reasonable doubt instruction was advisory, the trial court effectively relieved the State of its burden to prove all of the elements of the charged offenses beyond a reasonable doubt. Accordingly, the question for purposes of the *Teague* analysis is whether such a holding was dictated by existing precedent in October 1976. We conclude that it was.

\* \* \*

Six years before Jenkins' convictions became final, the Supreme Court announced in *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), that due process

requires that the government prove each element of a crime beyond a reasonable doubt. *See Winship,* 397 U.S. at 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 ("Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."); *see also Cool v. United States,* 409 U.S. 100, 103–04, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972) (per curiam) (holding that an instruction which "allow[ed] the jury to convict despite its failure to find guilt beyond a reasonable doubt" mandates reversal of the conviction). In light of this precedent, *we conclude that the rule Jenkins seeks is not a new one.* Accordingly, the rule of *Teague v. Lane* does not bar our consideration of the merits of Jenkins' claim.

*Id.* at 685 (emphasis added) (footnote omitted).

■ With the *Teague* analysis in mind, we must determine whether a holding in favor of appellee was dictated by existing precedent when his convictions became final. In the case at hand, appellee's convictions became final on December 2, 1980, when his petition for a writ of *certiorari* to the Maryland Court of Appeals was denied. As noted, the decisions in *Stevenson* and *Montgomery* issued on December 17, 1980 and December 4, 1981, respectively, were handed down after December 2, 1980. Significantly, in an attempt to bolster the majority opinion against the robust dissent, the *Stevenson* decision specifically noted that there had been no claim that the instructions in that case were prejudicial; rather, the appeal sought to challenge the constitutionality of Article 23 itself.

Like the instructions in the case at hand, the Court in *Jenkins,* 221 F.3d at 685, observed:

Here, the trial court clearly explained at the beginning of its charge to the jury that the jury was the sole judge of the law and that the instructions given by the court were advisory only. With each individual instruction, the court

reminded the jury of the advisory nature of the instructions. We conclude that there is a reasonable likelihood that the jury interpreted these instructions as allowing it to ignore the "advice" of the court that the jury should find proof beyond a reasonable doubt. Accordingly, we conclude that the advisory instructions violated Jenkins' right to due process.

We hold that the decision that Article 23 of the Maryland Declaration of Rights violated the Due Process Clause of the Fourteenth Amendment of the United States Constitution was dictated by existing precedent on December 2, 1980. Instructing the jury that the law as presented to it is binding is essential to the guarantee that no criminal conviction be obtained other than by the rule of law. We are guided by and base our holding on the reasoning in *Jenkins*. Independent of *Jenkins*, however, the reach of the Due Process Clause announced in *In re Winship*, ineluctably constrains us to conclude that the declaration of the unconstitutionality of Article 23 occurred when the Supreme Court rendered that landmark decision.

## C.

## SUFFICIENCY OF INSTRUCTIONS

The State's argument that the jury instructions, "while at times couched in advisory terms, were sufficient, when read in their totality, to inform a jury that its function as judges of the law was limited," need not detain us long. Indeed, viewing the instructions, in context, as a whole, as the State urges us, the most cursory review compels the conclusion that virtually the entirety of the instructions were couched in terms that they were "advisory." The phrase, "I instruct you in an advisory capacity ..." preceded instructions regarding the State's burden to prove appellee guilty beyond a reasonable doubt, appellee's presumption of innocence, the law of the degrees of participation, the fact that arguments of counsel are not evidence and that credibility of witnesses is relegated exclusively to the jury. In referring to the closing arguments

of counsel, the court instructed the jury, "And because you are the judges of the law ... [counsel] may tell you what they think the law is in our State and how you should apply it in this particular case."

Prior to administering the specific jury instructions, the court gave a preliminary charge, wherein it said, "In our State, unlike 48 other states in our country, in a criminal case you as the jury sit not only as what we call the triers of fact, you also sit as what we call the judge of the law." Continuing, the court said of the facts in the case "... will be as you find them to be, and the law in this case will be as you find it to be. And because you are both the judges of the fact and the judges of the law anything that I may now tell you about either the facts of the law is purely advisory."

Most telling, with the one proviso that "You are not to apply the law as you think it ought to be or what it should be, but what it in fact is in this particular case," the jury was told, *"You may disregard anything that I tell you, and you may pay absolutely no attention to what I tell you concerning either the facts or the law.* (Emphasis added). It is difficult to conceive of how the trial judge could have more emphatically impressed upon the jury its expansive role in judging virtually every aspect of the law involved. Thus, the State's claim that the court's instructions, when read in their totality, were sufficient to inform a jury that its function as judges of the law was limited," is without merit.

## II

The State contends next, in its brief, that the post conviction court, citing *Lane v. State,* 348 Md. 272, 703 A.2d 180 (1997) and "having relied on the nature of appellee's complaint as one of jurisdiction, erroneously found that [appellee] had not waived his ability to pursue this allegation of error under section 7–106 of the post conviction statute." In reaching this conclusion, the State avers, "the court completely ignored the fact that [appellee] had raised the jurisdictional issue in his direct appeal to this Court." The court, it concludes, "failed to

take notice of the trial court's instructions to the jury on this issue."

## A.

## ISSUE FULLY AND FINALLY LITIGATED

■ Appellee argued at the post conviction hearing and here, on appeal, that the trial court's instruction on jurisdiction improperly permitted the jury to find jurisdiction for the rape and sex offense charges based on a venue statute. The State argues that this Court upheld the jury's finding of jurisdiction in his direct appeal and that the issue has, therefore, "been fully and finally litigated and resolved against [appellee] at least as to these proceedings." Once an appellate court rules on a request presented on appeal, litigants and lower courts become bound by the ruling, which is considered to be the law the case. *Nnoli v. Nnoli,* 101 Md.App. 243, 263, 646 A.2d 1021 (1994).

On appeal, appellee responds, in his brief, to the State's contention that the issue has been fully and finally litigated:

The State argues, in this appeal, that it does not matter if the trial court gave an erroneous instruction confusing "venue" with "jurisdiction," because [appellee] appealed the sufficiency of the evidence and raised the jurisdictional issue on appeal.

However, it was for the jury, upon proper instructions, to determine whether or not, the offenses occurred in Maryland or the District of Columbia. The instruction made it appear to the jury that, wherever the offenses occurred, the accused was guilty, under Maryland Law. The trial court sent to the jury a verdict sheet allowing the jury to find guilt, either because the crimes occurred in Maryland, or because Art. 27, § 465 applies to crimes committed in the District of Columbia.... To tell the jury that the State must prove, beyond a reasonable doubt, that the crimes occurred in Maryland, but that it really does not matter where they happened, as long as the abduction began in Maryland, is to seriously erode two of the "bedrock characteristics" which are "indispensable to the integrity of every

criminal trial," that is, the burden of proof and the standard of proof.

Preliminary to addressing this issue, the court ruled, "Since, this is a matter of jurisdiction, this claim is not barred and is properly raised." The post conviction court thereafter found that there was no dispute that the initial kidnapping occurred in the State of Maryland. The jury instruction challenged by appellee regarding jurisdiction is as follows:

We have sat here for the past five days and listened to an incident that started out in our county, and it is alleged by the State of Maryland that all of the incidents in this case either occurred in the State of Maryland or the State of Maryland has jurisdiction to hear this matter by virtue of a statute, which I will tell you about later, that our Legislature has enacted.... If you find that the defendant is guilty, you will also make a finding that the offense either occurred in Maryland or that jurisdiction was obtained in this case under Article 27, 465, of our Annotated Code, which I will tell you about later.

* * *

Now, when you make that determination or if you make a determination as to first degree rape you will also make a determination as to where this rape occurred, and you will see there is a place for you to check either that the rape occurred in our State or that jurisdiction wa[s] obtained under Article 27, Section 465 of our Annotated Code. And our Legislature enacted a statute that says in regards to sexual offenses if a person is transported by any means with the intent to violate this subheading, meaning sexual offenses and the intent is followed by actual violation of this subheading, the defendant may be tried in the appropriate court within whose jurisdiction the county lies where the transportation was offered, solicited, begun, continued or ended.

If you find that the application of this statute is how this particular sex offense occurred you will check that, if you are not convinced beyond a reasonable doubt that the offense occurred in our state.

In ruling on appellee's claim that the trial court erroneously told the jury that it really does not matter where the offenses occurred, as long as the abduction began in Maryland, the post conviction court opined:

The court was referring to a statute regarding venue between different counties within Maryland. The statute does not confer on Maryland courts jurisdiction over sexual offenses occurring outside of the State. Whereas "jurisdiction is the power to hear and determine a case; venue signifies the place of trial." *State v. Jones*, 51 Md.App. 321, 324, 443 A.2d 967, 970 (1982).

In *Jones*, the Court of Appeals discussing the same statute, concluded that Article 27, section 465, applies only to venue between counties within Maryland, and that "Section 465 does not apply to a defendant who has transported his victim across state lines." *Jones*, 51 Md.App. at 324, 443 A.2d at 970.

The Court's instruction was, therefore, improper in the present case. The instruction allowed the jury to find jurisdiction if it concluded that the defendant merely transported the victim only with the intent to commit a violation of the statute. This is clearly not the law in Maryland. In *West v. State*, 369 Md. 150, 797 A.2d 1278 (2002), the defendant kidnapped the victim in Maryland and drove to D.C., where the sexual assaults occurred. The Court noted that an offense may be prosecuted only where the "essential" or "key" or "vital" or the "gravamen" of the offense takes place.

The instruction misstated the law as to territorial jurisdiction. "[W]hen the 'evidence raises a genuine dispute' over Maryland's territorial jurisdiction, 'territorial jurisdiction becomes an issue the State must prove,' and it must provide it 'beyond a reasonable doubt.'" *West*, 369 Md. at 158, 797 A.2d at 1282 (citing *State v. Butler*, 353 Md. 67, 79, 81, 724 A.2d 657, 663, 664 (1999)). This unquestionably is a determination that is to be made by the jury and only the jury. "[W]hen evidence exists that the crime may have been

committed outside Maryland's territorial jurisdiction and a defendant disputes the territorial jurisdiction of the Maryland courts to try him or her, the issue of where the crime was committed is fact-dependent and thus for the trier of fact." *State v. Butler*, 353 Md. 67, 79, 724 A.2d 657, 663 (1999). Because the question of territorial jurisdiction was not properly submitted to the jury, the Petitioner's request for post-conviction relief must be granted on this ground as to Counts III, IV, V, VI, VII, VIII, IX, X, XI, XII, and XIII.

We explicated the distinction between jurisdiction and venue in *Lett v. State*, 51 Md.App. 668, 675–76, 445 A.2d 1050 (1982):

> In an effort to bring some clarity to the "jurisdiction-venue" confusion the Court of Appeals in the case of *McBurney v. State*, 280 Md. 21, 31, 371 A.2d 129, 135 (1977), has had this to say:
>
>> There are two facets to the jurisdiction of a court-jurisdiction over the subject matter and venue. With respect to the subject matter, within its county, a circuit court of this State has full common law jurisdiction in all criminal cases committed in Maryland except where limited by law. Maryland Code (1974) Courts and Judicial Proceedings Article § 1–501. Venue, however, is the place of trial, or where a criminal trial may properly occur.
>
> A perusal of these distinctions makes it clear that the appellant was directing his complaint against that of venue as distinguished from subject matter jurisdiction. As Judge Moore said for this Court in *State v. Jones*, 51 Md.App. 321, 325, 443 A.2d 967, 971 (1982), "Section 465 has no extraterritorial effect-it is simply a venue statute, . . . ."

█ We said, in our unreported, *per curiam* opinion filed on October 16, 1980, in appellee's direct appeal, "The appellant's most serious contention is that the Maryland court that tried him lacked jurisdiction over the subject matter, because of failure of the State to show clearly that the crimes occurred within the State of Maryland rather than in the adjoining District of Columbia." After recounting the testimony regarding the locations of the sordid events, we concluded, "From

the fact that she was picked up in Maryland initially, the fact of the place of the kidnapping was a solid mile and one half in Maryland, and the fact that she was ultimately dropped off in Maryland, a jury would be permitted to infer reasonably, certainly in the absence of affirmative evidence to the contrary, that the crimes in question occurred in Maryland. Indeed the evidence as to the situs of these vicious crimes points far more strongly toward Maryland than it does toward the District of Columbia and a holding that, if in doubt, neither jurisdiction could proceed against the criminal would be an absurdity."

What was decided in appellee's direct appeal was not whether the jury was provided with an instruction based on an inapplicable statute, thereby allowing it to determine that there was subject matter jurisdiction, even if it discounted all of the testimony establishing that the crimes occurred in Maryland. Rather, our opinion decided that there was sufficient evidence, if credited, to establish that the crimes occurred within the State. Thus, our *per curiam* opinion did not decide this issue and did not, therefore, become the law of the case. Whether reversible error was committed as a result of the instruction on jurisdiction was not fully and finally litigated in appellee's direct appeal.

We cannot say that the post conviction court's conclusion that there was a substantial probability or possibility that the jury would not have unanimously found, beyond a reasonable doubt, that the essential elements of the offenses occurred in Maryland, had not the erroneous venue instruction been given to the jury. The issue before us is not, as the State asserts, whether the question of jurisdiction has been finally litigated, but rather, whether the fact-finding process was undermined by failing to provide the jury with the proper legal standard.

### B.

### WAIVER: JURY INSTRUCTION REGARDING JURISDICTION

The State further argues, in its brief, that "when the waiver analysis is limited to a complaint regarding the failure to give

a proper instruction, it is readily apparent that appellee, having failed to raise this issue at trial or on direct appeal, is precluded from raising it now." Moreover, the State argues that "even if not waived or decided on appeal, appellee is not entitled to relief on this issue as the jury had been properly instructed on the necessity to find, beyond a reasonable doubt, that the acts charged occurred in Maryland."

Maryland Ann.Code Art. 27 § 465, captioned "Jurisdiction where victim transported provided":

> If a person is transported by any means, with the intent to violate this subheading, and the intent is followed by actual violation of this subheading, the defendant may be tried in the appropriate court within whose jurisdiction the county lies, *where the transportation was offered, solicited, begun, continued or ended.* (Emphasis added).

The *McBurney* decision, proclaiming that § 465 of Article 27 had no extra-territorial effect, was handed down more than two years before appellee's trial. The statute, unquestionably, was erroneously considered by the jury in determining whether the evidence was sufficient to establish jurisdiction. The post conviction court properly concluded that consideration of the improper instruction relieved the jury of the obligation to find beyond a reasonable doubt that the offenses occurred in Maryland rather than Washington D.C.

## C.

### PROPRIETY OF INSTRUCTIONS
### AS TO JURISDICTION

██ The post conviction court, referring to Article 27, § 465, stated that it applied to venue between different counties within Maryland, but did not confer on Maryland courts jurisdiction over sexual offenses occurring outside of the State. As noted, observing that, "Jurisdiction is the power to hear and determine a case [whereas] venue signifies the place of trial," the post conviction court ruled that "the instruction allowed the jury to find jurisdiction if it concluded that the

defendant merely transported the victim only with the intent to commit a violation of the statute."

The State assails the court's ruling, stating, "Here, unlike *West*, the jury was instructed that it must find all of the elements of the crimes charged occurred in Maryland before finding jurisdiction in Maryland." In *West*, the State says, the error was that the jury was instructed that jurisdiction could be established upon a finding that any one of several essential elements of rape and sexual assault occurred in Maryland. The State misconstrues the post conviction court's reliance on *West*. The instruction, according to the court, allowed the jury to find jurisdiction if it concluded that the defendant merely transported the victim *only with the intent* to commit a violation of the statute. The post conviction court juxtaposed commission of the sexual offense in the jurisdiction versus harboring the intent in that location as opposed to proof that less than all of the elements of the sexual offense coalesced in the same location. The court correctly determined that, as a result of the instruction's incorporation of § 465, the jury was allowed to return guilty verdicts on offenses that incurred in the District of Columbia.

## III

### INEFFECTIVE ASSISTANCE OF COUNSEL

The State, in contending that counsel was not ineffective, posits, "[In] order to establish ineffective assistance of counsel, it is necessary to prove both that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable possibility that but for counsel's errors, the result of the proceedings would have been different." The State argues that the post conviction court, in relying upon a misrepresentation of *Flansburg v. State*, 103 Md.App. 394, 653 A.2d 966 (1995), *affirmed*, 345 Md. 694, 694 A.2d 462 (1997), erroneously concluded that appellee's trial counsel was ineffective simply because no Motion for Modification of Sentence had been filed. In so doing, urges the State, the court never

engaged in the required analysis for determining whether appellee's counsel was ineffective.

Appellee countered, in the hearing on the petition for post conviction relief, that trial counsel was ineffective for three reasons: the failure to object to the trial court's instruction that allowed the jury to find Maryland jurisdiction based on a venue statute, the failure to object and request an adequate definition of reasonable doubt and the failure to file a motion for modification of sentence.

In order to constitute ineffective assistance of counsel, rendering a defendant's conviction or sentence invalid, he must show that:

(1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Strickland, supra,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Gross v. State,* 371 Md. 334, 348–50, 809 A.2d 627 (2002). In order to be deficient, counsel's acts or omissions must be "outside the wide range of professional competent assistance." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. The burden is upon the defendant to prove both ineffective performance and prejudice. *Oken v. State,* 343 Md. 256, 284, 681 A.2d 30 (1996).

## A.

### FAILURE TO OBJECT TO INSTRUCTION TO JURISDICTION AND VENUE

Recounting its determination that the trial court improperly instructed the jury that it could find that Maryland had territorial jurisdiction based on an inapplicable venue statute, the post conviction court concluded that trial counsel was ineffective for failing to object to the erroneous instruction. It noted that the undisputed evidence was that the victim was put in a van and driven around for well over two hours and that the complainant believed that at some point during this

two-hour period, she was in the District of Columbia. The post conviction court agreed with appellee's contention that there was a substantial probability or possibility that, had counsel objected to the erroneous venue instruction and requested a proper jurisdiction instruction and had that instruction been granted, the jury would not have unanimously found, beyond a reasonable doubt, that the key elements of the offenses occurred in Maryland.

The distinction between jurisdiction and venue as we noted, *supra*, is that with respect to the subject matter, within its county, a circuit court of this State has full common law jurisdiction in all criminal cases committed in Maryland except where limited by law whereas venue is the place of trial or where a criminal trial may properly occur.

Despite the fact that counsel for appellee argued the sufficiency of the evidence to establish jurisdiction, counsel failed to object to the venue statute instruction. It is undisputed that the complainant believed that, at some point during her two-hour captivity, the van in which the assault took place traveled through the District of Columbia. The members of the jury were told to check the block on the verdict sheet to indicate that they were satisfied beyond a reasonable doubt that the offenses occurred in Maryland. The prosecutor, in closing, argued: *"To find, however, that the defendant is guilty under this special statute you need not be convinced beyond a reasonable doubt of anything in terms of where the actual act occurred.* You need only find there was a transportation *in this county at some point* with the intent to rape." (Emphasis added).

Because the *McBurney* decision, proclaiming that § 465 of Article 27 had no extra-territorial effect, was handed down more than two years before appellee's trial, to be within the wide range of professional competent assistance, *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052, appellee's trial counsel was required to have objected to its inclusion in any jury instructions. There can be little doubt that the result might well have been different had appellee's trial counsel objected to

and been granted a proper instruction on jurisdiction devoid of the provisions of Art. 27, § 465.

## B.

## RIGHT TO FILE BELATED MOTION FOR MODIFICATION OF SENTENCE

The State, in contending that the post conviction court erred in finding that appellee is entitled to file a belated motion for modification of sentence, posits, "Finally, relying upon a misrepresentation of *Flansburg v. State,* 103 Md.App. 394, 653 A.2d 966, *affirmed,* 345 Md. 694, 694 A.2d 462 (1997)," the court erroneously concluded that appellee's trial counsel was ineffective because no Motion for Modification of Sentence had been filed. In so doing, the court never engaged in the required analysis for determining whether appellee's counsel was ineffective.

The post conviction court's "misrepresentation of *Flansburg,*" as posited by the State, is that, in that decision, the issue was the proper forum to address claims of ineffective assistance of counsel arising out of issues regarding counsel's performance after sentencing. By contrast, insists the State, the court focused on the entitlement to representation upon the filing of the motion and the proper forum when applying for a modification of sentence, rather than whether the failure itself by appellee's counsel, to file a motion for modification of sentence, "fell below an objective standard of reasonableness" and "there [was] a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

The State correctly represents that the post conviction court elaborated on the stages in the proceedings in which a defendant, pursuant to Md. Rule 4–214, would be entitled to representation, which of course means effective representation. Having established, in citing *Flansburg,* that a defendant is entitled to representation "with regard to any and all

timely motions for modification of sentence regardless of when they occur," the post conviction court's sole statement regarding counsel's performance was, "There was no risk that a greater sentence would be imposed." Notwithstanding that the court failed to engage in an in-depth analysis regarding counsel's performance, we believe that this terse statement effectively addresses both prongs of the *Strickland* test.

An objective standard of reasonableness required that counsel file a motion for modification of sentence within ninety days after sentencing. Implicit in the court's statement that, had the motion been filed, appellee would have been subjected to no greater risk was the conclusion that the failure to file a motion could not be viewed as a trial tactic. Unlike a substandard performance during the trial on the merits, there was no downside to ensuring appellee an opportunity to receive a reduced sentence. Simply put, other than an express directive from appellee not to file a motion for modification, there was no conceivable reason why, in the course of representing appellee, that a motion would not have been filed. The basis of the court's finding of ineffective assistance of counsel was transparent, without extensive analysis. The court independently assesses the reasonableness of conduct and prejudice. *Oken, supra.* Absent a clearly erroneous finding, this Court will not disturb a lower court's findings. *Oken,* 343 Md. at 299, 681 A.2d 30; *see Strickland* 466 U.S. at 698, 104 S.Ct. 2052. Contrary to the State's assertion, the court's failure to make a more explicit factual finding as to why counsel did not file a motion for modification of sentence was not clearly erroneous.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED.**

**COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.**